[No. S122060. June 9, 2005.]

COACHELLA VALLEY MOSQUITO AND VECTOR CONTROL
DISTRICT, Plaintiff and Appellant, v.
CALIFORNIA PUBLIC EMPLOYMENT RELATIONS BOARD, Defendant
and Respondent;
CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION et al., Real Parties
in Interest and Respondents.

1074

## COUNSEL

Lisa Garvin Copeland for Plaintiff and Appellant.

Jack L. White, City Attorney (Anaheim) and Carol J. Flynn, Assistant City Attorney, for the Cities of Anaheim, Carlsbad, Indian Wells, Monterey, Redlands, San Buenaventura, San Luis Obispo, San Pablo, Santa Paula, Walnut Creek, the California Association of Sanitation Agencies, the Orange County Vector Control District and the Sunline Transit Agency as Amici Curiae on behalf of Plaintiff and Appellant.

Ben Allamano for Mosquito and Vector Control Association of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Robert Thompson and Kristin L. Rosi for Defendant and Respondent.

Rothner, Segall & Greenstone, Glenn Rothner, Emma Leheny and Jean Shin for American Federation for State, County and Municipal Employees Union, AFL-CIO as Amicus Curiae on behalf of Defendant and Respondent.

Michael R. Clancy, Madalyn J. Frazzini and Sonja J. Woodward for Real Party in Interest and Respondent California School Employees Association.

No appearances for Real Parties in Interest and Respondents Ramon C. Gonzalez, Mike Martinez, Jeffrey Garcia and Virginia Sanchez.

OPINION

**KENNARD, J.**—The Meyers-Milias-Brown Act (Gov. Code, §§ 3500–3511; hereafter the MMBA) governs collective bargaining and employer-employee relations for most California local public entities, including cities, counties, and special districts. Before July 1, 2001, an employee association claiming a violation of the MMBA could bring an action in superior court. (See *Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 541–542 [28 Cal.Rptr.2d 617, 869 P.2d 1142].) Effective July 1, 2001, however, the Legislature vested the California Public Employment Relations Board (PERB) with exclusive jurisdiction over alleged violations of the MMBA.[1] (Gov. Code, § 3509, added by Stats. 2000, ch. 901, § 8.) In making this fundamental change, the Legislature did not specify a limitations period for making an MMBA unfair practice charge to the PERB. Under every other public employment law subject to the PERB's jurisdiction, however, the Legislature has expressly designated six months as the limitations period for making an unfair practice charge. (See Gov. Code, §§ 3514.5, subd. (a), 3541.5, subd. (a), 3563.2, subd. (a), 71639.1, subd. (c), 71825, subd. (c); Pub. Util. Code, § 99561.2, subd. (a).)

The main issue here is whether the limitations period for making an MMBA unfair practice charge to the PERB is three years, which the PERB insists was the generally accepted limitations period for an MMBA cause of action filed in superior court (see *Giffin v. United Transportation Union* (1987) 190 Cal.App.3d 1359, 1365 [236 Cal.Rptr. 6] [holding that three years is the statute of limitations for an alleged violation of state labor law, without mentioning the MMBA]), or six months, which is the limitations period for all other unfair practice charges subject to the PERB's jurisdiction. We conclude the limitations period is six months.

This case presents two additional issues. One issue, which we address first, is whether this action is barred by the doctrine requiring exhaustion of administrative remedies. On this issue, we conclude that the failure to exhaust administrative remedies is excused because this action challenges the PERB's jurisdiction and raises issues of law with broad public importance. The other issue concerns retroactive application of the shortened limitations period. On this issue, we conclude that the shortened limitations period applies retroactively, but also that when an unfair practice charge is based on conduct before the effective date of the shortened limitations period, the charge is timely if filed within three years of the alleged unfair practice or before January 1, 2002, whichever occurs sooner.

---

[1] Exempt from the PERB's jurisdiction under the MMBA are peace officers, management employees, the City of Los Angeles, and the County of Los Angeles. (Gov. Code, §§ 3509, subds. (d)–(e), 3511.)

Because the Court of Appeal's judgment is consistent with these conclusions, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

On July 6, 2001, the California School Employees Association (CSEA) filed an MMBA unfair practice charge with the PERB against the Coachella Valley Mosquito and Vector Control District (District), a special district (see Health & Saf. Code, § 2000 et seq. [formerly § 2200 et seq.]) subject to the MMBA. The CSEA amended the charge on August 29, 2001. In the amended charge, the CSEA, as the exclusive employee representative of a bargaining unit of the District's employees, alleged that the District had discriminated against several CSEA-represented employees for their participation in negotiations for a memorandum of understanding, interfered with the rights of additional unit members by threatening disciplinary action if they engaged in activity protected under the MMBA, and unilaterally changed the means by which employees' annual performance evaluations were prepared and administered. On October 23, 2001, the PERB issued a complaint against the District on these allegations, alleging that the District had committed specified unfair practices on various dates between December 1999 and July 2001.

On November 13, 2001, the District filed an answer to the complaint and a motion to dismiss it. In the motion, the District argued that the PERB lacked jurisdiction over alleged MMBA violations occurring before July 1, 2001, and that six months was the limitations period for an MMBA unfair practice charge. On December 5, 2001, the PERB's board agent denied the motion to dismiss.

The District objected to the board agent's ruling and requested a ruling by the PERB itself. Under a PERB regulation, however, the PERB does not review a board agent's interim ruling unless the agent joins in the party's request for review. (Cal. Code Regs., tit. 8, § 32200.) On January 3, 2002, the board agent refused to join in the District's request.

On January 9, 2002, the District petitioned the superior court for writs of mandate and prohibition, naming the CSEA and certain District employees as real parties in interest and arguing that the PERB lacked jurisdiction to issue the complaint.[2] After the PERB filed preliminary opposition, the superior court issued an order to show cause. Both the CSEA and the PERB then filed formal opposition in which they argued, among other things, that the District's action was barred because the administrative proceedings had not

---

[2] Final decisions of the PERB are now reviewable by a writ petition filed directly in the Court of Appeal, rather than in the superior court. (Gov. Code, § 3509.5, subd. (b), added by Stats. 2002, ch. 1137, § 3.)

concluded and therefore the District had not exhausted its administrative remedies. The superior court held a brief hearing, after which it denied the petition, concluding that the District was not required to exhaust its administrative remedies before challenging the PERB's jurisdiction, that the PERB had jurisdiction over alleged MMBA violations occurring before July 1, 2001, that the limitations period for alleging these violations was three years, and that the PERB therefore had jurisdiction over each unfair practice alleged in the complaint.

The District appealed from the superior court's judgment denying the petition. In May 2002, while the appeal was pending, the District and the CSEA executed a settlement agreement covering the merits of the unfair practices charge, the CSEA withdrew the charge, and the PERB complaint was dismissed. Although the settlement had rendered it moot, the appeal nonetheless proceeded, and all parties joined in urging the Court of Appeal to issue a decision on the merits. The court granted requests for judicial notice of various legislative history documents. On December 9, 2003, the court issued its decision.

The Court of Appeal held: (1) Because the appeal presented issues of broad public interest that were likely to recur, the court could properly resolve those issues even though the case had become moot;[3] (2) the District's action was not barred by the rule requiring exhaustion of administrative remedies because exhaustion would have been futile; (3) the PERB had jurisdiction to issue a complaint based on unfair practices occurring before July 1, 2001;[4] (4) the limitations period for an MMBA unfair practice charge filed with the PERB is six months; and (5) to prevent unfair retroactive application of the shortened limitations period, charges based on unfair practices occurring before July 1, 2001, were timely if filed with the PERB within three years of their occurrence or before January 1, 2002, whichever occurred first. Applying these holdings to the facts, the Court of Appeal concluded that the CSEA's unfair practice charge was timely filed as to all of the alleged unfair practices, and therefore it affirmed the trial court's judgment.

This court granted the PERB's petition for review.

---

[3] We agree with the Court of Appeal that this case poses issues of broad public interest that are likely to recur, and we conclude that the Court of Appeal did not abuse its discretion in deciding to resolve those issues even though this case has become moot. (See *Cadence Design Systems, Inc. v. Avant! Corp.* (2002) 29 Cal.4th 215, 218, fn. 2 [127 Cal.Rptr.2d 169, 57 P.3d 647]; *Edelstein v. City and County of San Francisco* (2002) 29 Cal.4th 164, 172 [126 Cal.Rptr.2d 727, 56 P.3d 1029]; *People v. Cheek* (2001) 25 Cal.4th 894, 897–898 [108 Cal.Rptr.2d 181, 24 P.3d 1204]; *Baluyut v. Superior Court* (1996) 12 Cal.4th 826, 829, fn. 4 [50 Cal.Rptr.2d 101, 911 P.2d 1].)

[4] No party has challenged this holding.

## II. Exhaustion of Administrative Remedies

■ In general, a party must exhaust administrative remedies before resorting to the courts. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942]; see *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1148 [43 Cal.Rptr.2d 693, 899 P.2d 79].) Under this rule, an administrative remedy is exhausted only upon "termination of all available, nonduplicative administrative review procedures." (*California Correctional Peace Officers Assn. v. State Personnel Bd., supra,* at p. 1151; see also *Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 933 [16 Cal.Rptr.3d 849, 94 P.3d 1055] [exhaustion requires agency decision of " 'entire controversy' "]; *People ex rel. Kennedy v. Beaumont Investment, Ltd.* (2003) 111 Cal.App.4th 102, 124 [3 Cal.Rptr.3d 429] [administrative process must " ' "run its course" ' "]; *Bleeck v. State Board of Optometry* (1971) 18 Cal.App.3d 415, 432 [95 Cal.Rptr. 860] [exhaustion requires "a full presentation to the administrative agency upon all issues of the case and at all prescribed stages of the administrative proceedings"].)

■ "The exhaustion doctrine is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary)." (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 391 [6 Cal.Rptr.2d 487, 826 P.2d 730]; accord, *Jonathan Neil & Assoc., Inc. v. Jones, supra,* 33 Cal.4th at p. 932; see also *Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 501 [87 Cal.Rptr.2d 702, 981 P.2d 543].) The exhaustion requirement applies to defenses as well as to claims for affirmative relief (*Styne v. Stevens* (2001) 26 Cal.4th 42, 57 [109 Cal.Rptr.2d 14, 26 P.3d 343]; see *Top Hat Liquors v. Department of Alcoholic Beverage Control* (1974) 13 Cal.3d 107, 110 [118 Cal.Rptr. 10, 529 P.2d 42]), and we have described exhaustion of administrative remedies as "a jurisdictional prerequisite to resort to the courts" (*Abelleira v. District Court of Appeal, supra,* 17 Cal.2d at p. 293; accord, *Styne v. Stevens, supra,* at p. 56; *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70 [99 Cal.Rptr.2d 316, 5 P.3d 874]).

■ The doctrine requiring exhaustion of administrative remedies is subject to exceptions. (*Public Employment Relations Bd. v. Superior Court* (1993) 13 Cal.App.4th 1816, 1827 [17 Cal.Rptr.2d 323].) Under one of these exceptions, "[f]ailure to exhaust administrative remedies is excused if it is clear that exhaustion would be futile." (*Jonathan Neil & Assoc., Inc. v. Jones, supra,* 33 Cal.4th at p. 936; see also *Honig v. Doe* (1988) 484 U.S. 305, 327 [98 L.Ed.2d 686, 108 S.Ct. 592].) "The futility exception requires that the

party invoking the exception 'can positively state that the [agency] has declared what its ruling will be on a particular case.' " (*Jonathan Neil & Assoc., Inc. v. Jones, supra,* at p. 936; see also *County of San Diego v. State of California* (1997) 15 Cal.4th 68, 89 [61 Cal.Rptr.2d 134, 931 P.2d 312]; *Economic Empowerment Foundation v. Quackenbush* (1997) 57 Cal.App.4th 677, 691 [67 Cal.Rptr.2d 323].)

Here, the Court of Appeal concluded that the futility exception excused the District's failure to exhaust its administrative remedies because the PERB had held, in other cases, that all MMBA unfair practice charges filed with the PERB on and after July 1, 2001, are subject to the three-year limitations period in Code of Civil Procedure section 338. Therefore, the PERB had declared what its ruling would be on the limitations issue, even though it had not reviewed the board agent's ruling in this particular matter.

■ That analysis is flawed. For the futility exception to apply, it is not sufficient that a party can show what the agency's ruling would be on a particular *issue or defense*. Rather, the party must show what the agency's ruling would be " 'on a particular *case*.' " (*Jonathan Neil & Assoc., Inc. v. Jones, supra,* 33 Cal.4th at p. 936, italics added.) This follows from the exhaustion doctrine itself, which "precludes review of an intermediate or interlocutory action of an administrative agency." (*Alta Loma School Dist. v. San Bernardino County Com. on School Dist. Reorganization* (1981) 124 Cal.App.3d 542, 554 [177 Cal.Rptr. 506]; see also *McHugh v. County of Santa Cruz* (1973) 33 Cal.App.3d 533, 538–539 [109 Cal.Rptr. 149] [exhaustion doctrine "requires that a party must not only initially raise the issue in the administrative forum, but he must proceed through the entire proceeding to a final decision on the merits of the entire controversy"].)

Here, it is not sufficient that we know what the PERB's final ruling would have been on the District's limitations defense. For the futility exception to apply, the District must show how the PERB would have ruled on the CSEA's unfair practices charge. Had the administrative proceeding run its course, the District might have prevailed on some procedural ground other than expiration of the limitations period, or it might have prevailed on the merits. Thus, the District did not show that further administrative proceedings would have been futile because the outcome of those proceedings was known in advance.

■ Although we do not agree with the Court of Appeal's reasoning, we agree with its conclusion that the District was excused from exhausting its administrative remedies with the PERB. Under another exception, exhaustion of administrative remedies may be excused when a party claims that "the agency lacks authority, statutory or otherwise, to resolve the underlying

dispute between the parties." (*Edgren v. Regents of University of California* (1984) 158 Cal.App.3d 515, 521 [205 Cal.Rptr. 6]; see also *County of Alpine v. County of Tuolumne* (1958) 49 Cal.2d 787, 798 [322 P.2d 449]; *City of Lodi v. Randtron* (2004) 118 Cal.App.4th 337, 360 [13 Cal.Rptr.3d 107]; *Buckley v. California Coastal Com.* (1998) 68 Cal.App.4th 178, 191 [80 Cal.Rptr.2d 562]; *People ex rel. Dept. of Conservation v. Triplett* (1996) 48 Cal.App.4th 233, 258 [55 Cal.Rptr.2d 610].)

■ Here, the limitations issue implicates the PERB's administrative authority or jurisdiction because the District contends that the applicable limitations period for MMBA unfair practice charges is found in Government Code section 3541.5, subdivision (a), which states that the PERB "shall not . . . [¶] . . . [i]ssue a complaint in respect of any charge based upon an alleged unfair practice occurring more than six months prior to the filing of the charge." Under this provision, expiration of the six-month limitation period deprives the PERB of authority to issue a complaint.

■ In deciding whether to entertain a claim that an agency lacks jurisdiction before the agency proceedings have run their course, a court considers three factors: the injury or burden that exhaustion will impose, the strength of the legal argument that the agency lacks jurisdiction, and the extent to which administrative expertise may aid in resolving the jurisdictional issue. (*Public Employment Relations Bd. v. Superior Court, supra,* 13 Cal.App.4th at p. 1830.)

Here, in regard to the first factor, the District did not show that it would suffer any unusual or irreparable injury if it were required to litigate the CSEA's unfair practices charge to completion before obtaining a judicial resolution of the jurisdictional limitations issues. (See *Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1269 [258 Cal.Rptr. 66] [administrative remedy not inadequate "merely because additional time and effort would be consumed by its being pursued through the ordinary course of the law"].) But the District is not the only party affected by this issue, and there is a significant public interest in obtaining a definitive resolution of this fundamental legal question. (See *Department of Personnel Administration v. Superior Court* (1992) 5 Cal.App.4th 155, 170–171 [6 Cal.Rptr.2d 714] [exhaustion excused because of urgent need of judicial determination]; see also *Lindeleaf v. Agricultural Labor Relations Bd.* (1986) 41 Cal.3d 861, 871 [226 Cal.Rptr. 119, 718 P.2d 106] [exhaustion excused when case raises "important questions of public policy"]; *Action Apartment Assn. v. Santa Monica Rent Control Bd.* (2001) 94 Cal.App.4th 587, 615 [114 Cal.Rptr.2d 412] [same].) So the first factor weighs in favor of judicial intervention.

In regard to the second factor, as explained more fully in the next part of this opinion, the District makes a strong and ultimately persuasive argument

that the proper limitations period is six months and not, as the PERB has ruled, three years. Thus, the second factor also weighs in favor of excusing exhaustion. Finally, in regard to the third factor, judicial intervention at this stage will not deny us the benefit of the PERB's administrative expertise; the issues are purely legal and of a kind within the expertise of courts, and we have received the benefit of the PERB's views on the issues through its briefs in this court. Accordingly, we conclude that all three factors favor judicial intervention. Thus, the administrative jurisdiction exception to the exhaustion doctrine applies, and the District's failure to exhaust administrative remedies is excused.

### III. STATUTE OF LIMITATIONS

To determine the limitations period for an unfair practice charge to the PERB alleging an MMBA violation, we begin by reviewing the history of the MMBA and of the PERB.

#### A. *The MMBA*

In 1961, the Legislature enacted the George Brown Act (Stats. 1961, ch. 1964, pp. 4141–4143), which for the first time recognized the rights of state and local public employees to organize and to have their representatives meet and confer with their public agency employers over wages and working conditions. In 1968, the Legislature went a step further by enacting the MMBA (Stats. 1968, ch. 1390, pp. 2725–2729), which "authorized labor and management representatives not only to confer but to enter into written agreements for presentation to the governing body of a municipal government or other local agency." (*Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 331 [124 Cal.Rptr. 513, 540 P.2d 609], fn. omitted; see also *Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 780–781 [35 Cal.Rptr.2d 814, 884 P.2d 645].) Although the MMBA covered most employees of local public entities, it did not include school districts' employees. (Stats. 1968, ch. 1390, § 2, p. 2726; see *Glendale City Employees' Assn., Inc. v. City of Glendale, supra,* at p. 331, fn. 1.) State employees were excluded from the MMBA in 1971. (Stats. 1971, ch. 254, § 2, pp. 401–402.)

The MMBA imposes on local public entities a duty to meet and confer in good faith with representatives of recognized employee organizations, in order to reach binding agreements governing wages, hours, and working conditions of the agencies' employees. (Gov. Code, § 3505.) "The duty to bargain requires the public agency to refrain from making unilateral changes in employees' wages and working conditions until the employer and employee association have bargained to impasse . . . ." (*Santa Clara County Counsel Attys. Assn. v. Woodside, supra,* 7 Cal.4th at p. 537.)

This court has observed that the MMBA was "[a] product of political compromise," that its provisions "are confusing, and, at times, contradictory," and that it "furnishes only a 'sketchy and frequently vague framework of employer-employee relations for California's local governmental agencies.' " (*International Brotherhood of Electrical Workers v. City of Gridley* (1983) 34 Cal.3d 191, 197 [193 Cal.Rptr. 518, 666 P.2d 960].) In *Glendale City Employees' Assn., Inc. v. City of Glendale, supra,* 15 Cal.3d 328, this court resolved one of the MMBA's ambiguities by holding that a written agreement (commonly termed a memorandum of understanding) entered into under the MMBA becomes binding and enforceable when the public agency employer ratifies it. (*Id.* at p. 332.) Answering another important question, we held that counties with civil service systems are not exempt from the MMBA's meet-and-confer requirement. (*Los Angeles County Civil Service Com. v. Superior Court* (1978) 23 Cal.3d 55, 62–65 [151 Cal.Rptr. 547, 588 P.2d 249].)

When the Legislature enacted the MMBA in 1968, it had not yet created the PERB, and it did not include in the MMBA any provisions expressly authorizing either administrative or judicial proceedings to enforce its provisions. Resolving the resulting uncertainty regarding methods of enforcement, this court in 1994 concluded that MMBA-created rights and duties were enforceable by a traditional mandate action under Code of Civil Procedure section 1085. (*Santa Clara County Counsel Attys. Assn. v. Woodside, supra,* 7 Cal.4th at p. 539.)

Although no published appellate decision ever expressly determined what statute of limitations applied to a mandate action to enforce MMBA-created rights and duties, a Court of Appeal held that the three-year statute of limitations in subdivision (a) of Code of Civil Procedure section 338 (hereafter section 338(a)) applied to an action to enforce a "state labor law." (*Giffin v. United Transportation Union, supra,* 190 Cal.App.3d at p. 1364.) The parties here appear to agree that, before the Legislature vested the PERB with exclusive jurisdiction over MMBA unfair practice charges, the three-year period specified in section 338(a) applied to a traditional mandate action brought in superior court alleging an unfair practice under the MMBA.

B. *The PERB*

The history of the PERB begins in 1975, when the Legislature adopted the Educational Employment Relations Act (Gov. Code, §§ 3540–3549.3; hereafter the EERA), which governs employer-employee relations for public schools (kindergarten through high school) and community colleges. (Stats. 1975, ch. 961, § 2, pp. 2247–2263.) As part of this new statutory scheme, the Legislature created the Educational Employment Relations Board (EERB),

"an expert, quasi-judicial administrative agency modeled after the National Labor Relations Board, to enforce the act." (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 177 [172 Cal.Rptr. 487, 624 P.2d 1215].) The Legislature vested the EERB with authority to adjudicate unfair labor practice charges under the EERA. (See Stats. 1975, ch. 961, § 2, pp. 2249–2252.)

The Legislature structured the EERA with the intention that it would eventually be expanded to incorporate other public employees. Thus, the EERA contains a declaration of purpose that includes this paragraph: "It is the further intention of the Legislature that any legislation enacted by the Legislature governing employer-employee relations of other public employees shall be incorporated into this chapter to the extent possible. The Legislature also finds and declares that it is an advantageous and desirable state policy to expand the jurisdiction of the board created pursuant to this chapter to cover other public employers and their employees, in the event that this legislation is enacted, and if this policy is carried out, the name of the Educational Employment Relations Board shall be changed to the 'Public Employment Relations Board.' " (Gov. Code, § 3540.)[5]

Two years later, in 1977, the Legislature enacted the State Employer-Employee Relations Act (Gov. Code, §§ 3512–3524) to govern relations between the state government and certain of its employees. (Stats. 1977, ch. 1159, § 4, pp. 3751–3760.) It was later renamed, and its official name is now the Ralph C. Dills Act (hereafter the Dills Act). (Stats. 1986, ch. 103, § 1, p. 237.) Despite the declaration of purpose two years earlier in the EERA, the Legislature did not incorporate the Dills Act into the EERA, instead enacting it as a separate chapter in the Government Code preceding the EERA. The Legislature did, however, expand the jurisdiction of the EERB to include adjudication of unfair practice charges under the Dills Act, and as a result the EERB was renamed the PERB. (See Gov. Code, §§ 3513, subd. (h), 3514.5, as added by Stats. 1977, ch. 1159, §§ 6–7, pp. 3761–3763.)

Since 1977, the PERB's jurisdiction has continued to expand as the Legislature has enacted new employment relations laws covering additional categories of public agencies and their employees. In 1978, the Legislature enacted the Higher Education Employer-Employee Relations Act (Gov. Code, §§ 3560–3599; hereafter the HEERA) to govern labor relations within the University of California, the California State University, and Hastings College of the Law. (Stats. 1978, ch. 744, § 3, pp. 2312–2333.) In 2000, the Legislature not only brought the MMBA within the PERB's jurisdiction (Stats. 2000, ch. 901, § 8), it also enacted the Trial Court Employment Protection and Governance Act (Gov. Code, §§ 71600–71675; hereafter the

---

[5] The chapter referred to in the quoted portion of the statute is chapter 10.7 of division 4 of title 1 of the Government Code. It includes Government Code sections 3540 to 3549.3.

TCEPGA) to govern labor relations and other employment matters within the state's trial courts. (Stats. 2000, ch. 1010, § 14.) In 2002, the Legislature enacted the Trial Court Interpreter Employment and Labor Relations Act (Gov. Code, §§ 71800–71829; hereafter the TCIERA) to govern labor relations and employment matters for trial court interpreters. (Stats. 2002, ch. 1047, § 2.) In 2003, the Legislature enacted the Los Angeles County Metropolitan Transit Authority Transit Employer-Employee Relations Act (Pub. Util. Code, §§ 99560–99570.4; hereafter the TERA) to govern labor relations for a public transit district. (Stats. 2003, ch. 833, § 1.)

In enacting the HEERA, the TCEPGA, the TCIERA, and the TERA, the Legislature followed the pattern set by the Dills Act. It did not incorporate the new laws' substantive provisions into the EERA; instead, it enacted the HEERA, the TCEPGA, and the TCIERA as separate chapters within the Government Code and the TERA as a chapter within the Public Utilities Code. But the Legislature expanded the PERB's jurisdiction to cover unfair labor practices alleged under each of these labor relations laws. (Gov. Code, §§ 3563, 71639.1, 71825; Pub. Util. Code, § 99561.)

In each of these six public employment relations laws—the Dills Act, the EERA, the HEERA, the TCEPGA, the TCIERA, and the TERA—the Legislature has expressly and separately specified a six-month limitations period for filing unfair practice charges with the PERB.[6] (Gov. Code, §§ 3514.5, subd. (a), 3541.5, subd. (a), 3563.2, subd. (a), 71639.1, subd. (c), 71825, subd. (c); Pub. Util. Code, §99561.2, subd. (a).) Thus, the EERA provides: "Any employee, employee organization, or employer shall have the right to file an unfair practice charge, except that the board shall not . . . [¶] . . . [i]ssue a complaint in respect of any charge based upon an alleged unfair practice occurring more than six months prior to the filing of the charge." (Gov. Code, § 3541.5, subd. (a).)[7] The other provisions express the six-month limitations period in identical words.[8]

---

[6] Six months is also the limitations period for an unfair practice charge to the Agricultural Labor Relations Board. (Lab. Code, § 1160.2.)

[7] This language tracks the wording of the National Labor Relations Act. (See 29 U.S.C. § 160(b) ["no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made"].)

[8] Although the six public employment relations laws all contain the same six-month limitations period, they differ in regard to tolling provisions. The HEERA and the TERA do not contain express tolling provisions. (Gov. Code, § 3563.2, subd. (a); Pub. Util. Code, § 99561.2, subd. (a).) But the four other laws contain variously worded provisions for tolling the six-month limitations period while a party exhausts other remedies. Both the Dills Act and the EERA provide that "[t]he board shall, in determining whether the charge was timely filed, consider the six-month limitation set forth in this subdivision to have been tolled during the time it took the charging party to exhaust the grievance machinery." (Gov. Code, § 3514.5,

## C. *Analysis*

As the parties recognize, determining what limitations period applies to an MMBA unfair practice charge requires construction of the relevant statutes. When engaged in statutory construction, our goal is "to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726].)

The Court of Appeal here concluded that the six-month limitations period in Government Code section 3541.5, a provision of the EERA, applies also to unfair practice charges filed with the PERB under the MMBA. The PERB argues, instead, that because the Legislature did not specify a limitations period when it vested the PERB with jurisdiction over MMBA unfair practice charges, it must have intended to continue the existing three-year statute of limitations that had applied to actions filed in superior court. The PERB invokes the rule of statutory construction that when the Legislature amends a statute without altering parts of the statute that have previously been judicially construed, the Legislature is deemed to have been aware of and to have acquiesced in the previous judicial construction. (See *Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 433 [2 Cal.Rptr.3d 699, 73 P.3d 554]; *People v. Masbruch* (1996) 13 Cal.4th 1001, 1007 [55 Cal.Rptr.2d 760, 920 P.2d 705].)

But "[t]he presumption of legislative acquiescence in prior judicial decisions is not conclusive in determining legislative intent" (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1156 [278 Cal.Rptr. 614, 805 P.2d 873]), and there are several reasons not to apply the presumption here.

---

subd. (a); see § 3541.5, subd. (a).) The TCEPGA provides that "if the rules and regulations adopted by a trial court require exhaustion of a remedy prior to filing an unfair practice charge or the charging party chooses to exhaust a trial court's remedy prior to filing an unfair practice charge, the six-month limitation set forth in this subsection shall be tolled during such reasonable amount of time it takes the charging party to exhaust the remedy, but nothing herein shall require a charging party to exhaust a remedy when that remedy would be futile." (Gov. Code, § 71639.1, subd. (c).) The TCIERA similarly provides that "if the rules and regulations adopted by a regional court interpreter employment relations committee require exhaustion of a remedy prior to filing an unfair practice charge or the charging party chooses to exhaust a regional court interpreter employment relations committee's remedy prior to filing an unfair practice charge, the six-month limitation set forth in this subsection shall be tolled during such reasonable amount of time it takes the charging party to exhaust the remedy, but nothing herein shall require a charging party to exhaust a remedy when that remedy would be futile." (Gov. Code, § 71825, subd. (c).)

First, as noted above, no published decision had ever expressly held that an action alleging an MMBA unfair practice was subject to the three-year statute of limitations in section 338(a). Although the Court of Appeal in *Giffin v. United Transportation Union, supra,* 190 Cal.App.3d 1359, had held that three years was the statute of limitations for an alleged violation of a state labor law, its opinion did not mention the MMBA, much less construe it. The case did not concern an employer's unfair labor practice, but an alleged breach of the duty of fair representation. The employing public agency was the Southern California Rapid Transit District, which was governed by its own specific labor relations law (Pub. Util. Code, §§ 30750–30756), and thus not subject to the MMBA. Therefore, this decision supports, at best, only a weak inference that the Legislature understood there was an existing three-year limitations period for an action alleging an MMBA unfair practice.[9]

Moreover, other MMBA actions filed in superior court were subject to other statutes of limitation. In *Anderson v. Los Angeles County Employee Relations Com.* (1991) 229 Cal.App.3d 817 [280 Cal.Rptr. 415], for example, a county employee asserted that an employee organization had violated the MMBA by denying him reinstatement after it had expelled him from membership. (*Id.* at pp. 819–822.) The employee first complained to the Los Angeles County Employee Relations Commission; when it ruled against him, he petitioned the superior court for a writ of administrative mandate. (*Id.* at pp. 822–823.) The statute of limitations for filing an administrative mandate petition is 90 days, not three years. (Code Civ. Proc., § 1094.6, subd. (b).) Therefore, the PERB is incorrect in asserting that *all* MMBA violation cases filed in superior court were subject to a three-year statute of limitations.

Second, the statutes of limitations set forth in the Code of Civil Procedure, including the three-year period in section 338(a), do not apply to administrative proceedings. (*City of Oakland v. Public Employees' Retirement System* (2002) 95 Cal.App.4th 29, 47–48 [115 Cal.Rptr.2d 151]; *Robert F. Kennedy Medical Center v. Department of Health Services* (1998) 61 Cal.App.4th 1357, 1361–1362 [72 Cal.Rptr.2d 180]; *Little Company of Mary*

---

[9] The PERB directs our attention to *Key v. Housing Authority of the City of Oakland* (N.D.Cal. Mar. 8, 1994, No. C 93-1880 BAC) 1994 WL 90182, a federal district court order dismissing a complaint on the ground it was filed beyond the applicable limitation date. The order does not mention the MMBA, and it was not reported in the Federal Supplement. Therefore, it is unlikely that members of the Legislature were aware of it or had it in mind when they voted in 2000 to bring the MMBA within the PERB's jurisdiction.

*Hospital v. Belshe* (1997) 53 Cal.App.4th 325, 329 [61 Cal.Rptr.2d 626]; *Bernd v. Eu* (1979) 100 Cal.App.3d 511, 515 [161 Cal.Rptr. 58].) The PERB concedes this point and does not argue that section 338(a) applies to MMBA unfair practice charges filed with the PERB. Instead, the PERB argues that the Legislature's silence should be construed as indicating its intent that the three-year limitations period should continue, *even though its statutory basis would no longer exist.*

■ We view this suggested inference as implausible and unsupported. As we have remarked, "[i]n the area of statutory construction, an examination of what the Legislature has done (as opposed to what it has left undone) is generally the more fruitful inquiry." (*Harris v. Capital Growth Investors XIV, supra,* 52 Cal.3d at p. 1156.) Here, what the Legislature did was to remove from the courts their initial jurisdiction over MMBA unfair practice charges. Assuming the Legislature was aware that a three-year limitations period had applied to traditional mandate actions filed in superior court to enforce the MMBA, we assume also that the Legislature was aware that section 338(a)'s three-year period was forum-specific—that is, it applied only to judicial proceedings. By changing the forum—vesting an administrative agency (the PERB) rather than the courts with initial jurisdiction over MMBA charges— the Legislature abrogated the three-year statute of limitations under section 338(a), and we assume that this abrogation was intentional and not inadvertent.

■ Finally, and perhaps most importantly, we do not construe statutes in isolation; rather, we construe every statute with reference to the whole system of law of which it is a part, so that all may be harmonized and anomalies avoided. (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 222 [17 Cal.Rptr.3d 842, 96 P.3d 141]; *Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74 P.3d 166].) The MMBA, which we construe here, is part of a larger system of law for the regulation of public employment relations under the initial jurisdiction of the PERB. The PERB suggests no way in which MMBA unfair practice charges differ from unfair practice charges under the other six public employment relations laws within the PERB's jurisdiction—the Dills Act, the EERA, the HEERA, the TCEPGA, the TCIERA, and the TERA—so as to justify a limitations period that is *six times longer* than the six months allowed under each of these other laws. The PERB suggests no rational ground upon which the Legislature could have

decided to treat MMBA unfair practices charges so differently in regard to the limitations period. We find it reasonable to infer that the Legislature intended no such anomaly, and that it intended, rather, a coherent and harmonious system of public employment relations laws in which all unfair practice charges filed with the PERB are subject to the same six-month limitations period.

The PERB relies also on the rule of statutory construction that when the Legislature uses a critical word or phrase in one statute, the omission of that word or phrase in another statute dealing with the same general subject generally shows a different legislative intent. (See *In re Young* (2004) 32 Cal.4th 900, 907 [12 Cal.Rptr.3d 48, 87 P.3d 797].) Thus, the PERB argues that because the Legislature included an express six-month limitation period in every other public employment relations law under the PERB's jurisdiction, the omission of an express six-month limitation period in the MMBA is compelling evidence of a different legislative intent. We would agree if there were any plausible ground for the Legislature to draw such a distinction, or, in other words, if this line of reasoning did not lead to an inexplicable anomaly. The rule that the PERB cites is merely one of several guides to statutory construction; it applies generally but not universally, and we do not find it helpful or controlling here.

The PERB argues that nothing in the language of the MMBA supports an inference that the Legislature intended a six-month limitations period for an MMBA unfair practice charge. But Government Code section 3509, which vests the PERB with jurisdiction over MMBA matters, states in subdivision (b) that "[a] complaint alleging any violation of this chapter or of any rules and regulations adopted by a public agency pursuant to Section 3507 or 3507.5 *shall be processed as an unfair practice charge by the board.*" (Italics added.) This language is appropriately read as referring to and incorporating an existing body of law concerning the manner in which the PERB processes unfair practice charges, including the limitations period for unfair practices charged under the three other then existing public employment relations laws—the EERA, the Dills Act, and the HEERA. The Legislature's later adoption of a six-month limitations period for the TCEPGA, the TCIERA, and the TERA is further evidence that the Legislature regards six months as an appropriate limit for bringing an unfair practice charge under each of the various schemes governing employer-employee relations in state and local government, all of which are now under the PERB's jurisdiction.

██ The PERB argues that Government Code section 3509, subdivision (b), which requires the PERB to "apply and interpret unfair labor practices consistent with existing judicial interpretations of this chapter,"

should be construed as requiring the PERB to continue applying the three-year statute of limitations previously applied to judicial proceedings to enforce the MMBA. (See also Gov. Code, § 3510, subd. (a) ["The provisions of this chapter shall be interpreted and applied by the board in a manner consistent with and in accordance with judicial interpretations of this chapter."].) This provision is most reasonably construed as incorporating existing judicial interpretations of substantive provisions of the MMBA, including what constitutes an unfair labor practice, but not as incorporating judicial decisions prescribing the procedures that were deemed suitable to *judicial* enforcement proceedings. In any event, there was no existing judicial precedent on the appropriate limitations period for an MMBA unfair practice charge to the PERB.

We have reviewed the documents judicially noticed by the Court of Appeal relating to Senate Bill No. 739 (1999–2000 Reg. Sess.), the legislation that vested the PERB with jurisdiction over MMBA unfair practice charges. (See *Dowhal v. SmithKline Beecham Consumer Healthcare* (2004) 32 Cal.4th 910, 922, fn. 4 [12 Cal.Rptr.3d 262, 88 P.3d 1] [documents that the Court of Appeal has judicially noticed become part of the record on appeal]; *Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 502, fn. 22 [66 Cal.Rptr.2d 304, 940 P.2d 891]; *Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 274, fn. 7 [41 Cal.Rptr.2d 220, 895 P.2d 56].) We find nothing in those documents to cause us to alter our conclusion that the Legislature intended a six-month limitations period for an MMBA unfair practice charge to the PERB. The topic of a limitations period for an unfair practice charge is not discussed in any of the legislative documents, nor do the documents suggest that the Legislature regarded the MMBA as differing from other public employment labor laws under the PERB's jurisdiction in a manner that would require or justify a substantially longer limitations period.

## IV. Retroactivity

The PERB and the CSEA argue that if, as we have concluded, transfer of initial jurisdiction over MMBA unfair practice charges from the superior courts to the PERB shortened the limitations period from three years to six months, this shortened period may not be applied retrospectively to unfair practices occurring before July 1, 2001, the legislation's effective date or, indeed, to any unfair practice occurring before the Court of Appeal's decision.

Legislation that shortens a limitations period is considered procedural and is applied retroactively to preexisting causes of action, so long as

parties are given a reasonable time in which to sue. (*Brown v. Bleiberg* (1982) 32 Cal.3d 426, 437 [186 Cal.Rptr. 228, 651 P.2d 815]; *Rosefield Packing Co. v. Superior Court* (1935) 4 Cal.2d 120, 122–123 [47 P.2d 716]; *Carlson v. Blatt* (2001) 87 Cal.App.4th 646, 650–651 [105 Cal.Rptr.2d 42].) When necessary to provide a reasonable time to sue, a shortened limitations period may be applied prospectively so that it commences on the effective date of the statute, rather than on the date the cause of action accrued. (*Rubinstein v. Barnes* (1987) 195 Cal.App.3d 276, 281–282 [240 Cal.Rptr. 535]; *Niagara Fire Ins. Co. v. Cole* (1965) 235 Cal.App.2d 40, 42–43 [44 Cal.Rptr. 889].)

Applying these legal principles, the Court of Appeal in this case concluded that the legislation vesting PERB with jurisdiction over MMBA unfair practice charges, effective July 1, 2001, shortened the applicable limitations period from three years to six months. This shortened limitations period applies retroactively to MMBA unfair practice charges based on conduct that occurred before July 1, 2001, provided that parties are given a reasonable time in which to file such charges with the PERB. Concluding that six months was a reasonable time in this context, the Court of Appeal held that for MMBA unfair practices occurring before July 1, 2001, a charge filed with the PERB was timely if brought within three years of the occurrence of the unfair practice, or within six months of July 1, 2001 (in other words, before January 1, 2002), whichever was sooner. We agree that this is a correct application of the controlling legal principles.

The PERB and the CSEA argue in substance that the Court of Appeal's holding retroactively extinguishes existing unfair practice claims because parties had no notice of the six-month limitations period until the Court of Appeal issued its decision. This assertion erroneously assumes that the Court of Appeal, rather than the Legislature, shortened the limitations period to six months and that this shortened limitations period took effect only when the Court of Appeal issued its decision. To the contrary, the Legislature established the six-month limitations period, effective July 1, 2001. After that date, there was no valid legal basis for any party, or for the PERB, to rely on the previous three-year limitations period, which had applied to judicial actions to enforce the MMBA. In determining the applicable limitations period, the Court of Appeal merely decided a legal question; it did not change any settled rule on which parties could reasonably have relied. (See *Brennan v. Tremco Inc.* (2001) 25 Cal.4th 310, 318 [105 Cal.Rptr.2d 790, 20 P.3d 1086].) Its holding, which we adopt, did not constitute an unfair retroactive change in the law.

## V.   DISPOSITION

The Court of Appeal's judgment is affirmed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.