Filed 10/18/21  Blanco v. County of Santa Barbara CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| HENRY BLANCO,<br><br>   Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF SANTA BARBARA,<br><br>   Defendant and Respondent. | 2d Civil No. B308340<br>(Super. Ct. No. 17CV04565)<br>(Santa Barbara County) |

Henry Blanco appeals from the denial of his petition for writ of mandate seeking to compel the County of Santa Barbara to issue the building and grading permits he needs to complete construction of a residence in the Santa Ynez Valley. The trial court granted the County's motion for judgment on the pleadings and dismissed the petition.  Blanco contends the court erred when it:  (1) concluded that he failed to properly plead the futility exception to the requirement to exhaust administrative remedies, (2) determined that he was required to resolve his litigation with a neighboring landowner in order to exhaust those

remedies, and (3) denied him leave to amend his petition. We affirm.

FACTUAL AND PROCEDURAL HISTORY[1]

*History of Blanco's property*

In 2012, Blanco bought a partially completed residence in the Lakeview Estates development. The County designated Lakeview Estates a "Special Problems Area" in 1986 due to road width and access problems. This designation prevents the County from issuing building and grading permits until a special committee approves them.

In 1968, a previous owner of Blanco's property recorded an easement "for road purposes on, over[,] and across a strip of land" owned by the Cargasacchi family (the 1968 road). A dirt and gravel road runs over the easement and provides the only ingress and egress to Lakeview Estates.

In the late 1980s, the Cargasacchis objected to Lakeview Estates landowners' use of the road. The parties reached a settlement in 1987 that identified the location of the road and specified that it was 30 feet wide and available for use by all Lakeview Estates landowners.

That settlement did not end the dispute between the Cargasacchis and Lakeview Estates landowners, however, so three years later they entered into a new agreement stating that: (1) the landowners would create an assessment district to pay for the construction of a new access road (the 1990 road), (2) the 1968 road and 1987 settlement agreement would remain in place,

---

[1] The facts are taken from Blanco's writ petition, which we accept as true in our review of the trial court's order granting the County's motion for judgment on the pleadings. (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

and (3) the 1968 road could be used by the Lakeview Estates landowners until the 1990 road was constructed.

In 1998, the prior owner of Blanco's property, the Marks family, obtained a permit to build a residence. They also obtained a grading permit. They then commenced construction of the residence, which continued until it was about 90 percent complete.

In 2000, the County ordered the Marks family to stop construction on the residence until the 1990 road was completed. Representatives from the family met with the fire chief, who said that he would lift the stop-work order once the 1968 road was improved. The Markses obtained a new grading permit and improved the road to the fire chief's specifications. The County nevertheless refused to lift the stop-work order.

The Marks family entered into a new agreement with the Cargasacchis in 2004 to permit them to use the 1968 road to finish construction of their home. The agreement provided that the Cargasacchis would "permit an increase in use of the original right contained in the [1990 agreement] but limited to only finishing construction of the single family residence now partly constructed." Eight years later, the Marks family ran into financial difficulties and quitclaimed the residence to Blanco. The 2004 agreement remained in force.

*Blanco's acquisition of the property*

After Blanco acquired the property, County officials required him to satisfy several requirements before it would issue the permits necessary to finish construction of the residence. For example, Blanco had to obtain an engineering and geological report on the condition of the 1968 road. The report confirmed

3

that the road was in good condition, was sufficiently wide for passenger vehicles, and could support emergency vehicles.

But the County told Blanco that the 1968 road required additional improvements. Frustrated by what he perceived as ever-changing requirements, Blanco demanded that the County issue the building, grading, and land-use permits he needed to complete construction of his residence. The director of the planning and development department rejected this demand, noting that Blanco had not yet provided the metes and bounds of the 1968 road and had failed to show that he had "the authority to alter and improve the road" without the Cargasacchis' consent. Until Blanco provided this information, the director refused to approve the permits.

*Trial court proceedings*

Blanco filed a petition for writ of mandate to compel the County to issue the permits he needs to finish construction of his residence. He contended the County abused its discretion when it conditioned issuance of the permits on the resolution of his dispute with the Cargasacchis.[2] He claimed that he had properly exhausted all administrative procedures, but even if he hadn't the "pursuit of further remedies, if there were any, would be futile and without constructive purpose given the course of action and inaction of the County to the date of the filing of this [p]etition." In support, he attached a copy of the planning and development director's letter refusing to grant him the building, grading, and land-use permits.

After the case was fully briefed, the County urged the trial court to stay proceedings on Blanco's writ petition while his

---

[2] Blanco sued the Cargasacchis two days after he filed his writ petition.

4

dispute with the Cargasacchis was resolved. It repeated that suggestion several times over the next year. The County said that it would "grant all the necessary permits" once that dispute had resolved.

The County subsequently changed course and filed a motion for judgment on the pleadings. It alleged that Blanco failed to exhaust his administrative remedies because he did not obtain a final decision on his permit request and did not appeal the planning and development director's decision. Blanco responded that he had properly pled the futility exception to the administrative exhaustion requirement. Alternatively, he sought leave to amend his petition to add facts showing that any administrative appeal would be futile.

The trial court granted the motion for judgment on the pleadings without granting Blanco leave to amend. It concluded that Blanco had not properly pled futility under existing law, explaining that "mere possibility of denial is not the standard." It also explained that its ruling was on the "procedural aspect" of the case and that Blanco could file for another writ petition should he prevail in his litigation against the Cargasacchis.

DISCUSSION

*Standard of review*

In reviewing whether the trial court properly granted the County's motion for judgment on the pleadings, we apply the same rules governing the review of an order sustaining a demurrer. (*Smiley v. Citibank* (1995) 11 Cal.4th 138, 146.) We independently determine whether Blanco's petition for writ of mandate states a cause of action. (*Blank*, *supra*, 39 Cal.3d at p. 318.) We reasonably interpret the petition, "reading it as a whole

5

and its parts in their context."  (*Ibid.*)  We deem true "'all material facts properly [pled], but not contentions, deductions[,] or conclusions of fact or law.  [Citation.]'"  (*Ibid.*)  "'We also consider matters [that] may be judicially noticed.'  [Citation.]"  (*Ibid.*)

*Futility exception*

Blanco first contends the trial court erroneously granted the County's motion for judgment on the pleadings because he properly pled that it would be futile for him to exhaust administrative remedies.  We disagree.

"In general, a party must exhaust administrative remedies before resorting to the courts."  (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080 (*Coachella Valley*).)  "Under this rule, an administrative remedy is exhausted only upon 'termination of all available, nonduplicative administrative review procedures.'  [Citations.]"  (*Ibid.*)  "The . . . requirement applies to defenses as well as to claims for affirmative relief [citations], and . . . [is] 'a jurisdictional prerequisite to resort to the courts' [citations]."  (*Ibid.*)

The exhaustion of administrative remedies requirement has a number of exceptions.  (*Coachella Valley, supra,* 35 Cal.4th at p. 1080.)  Relevant here is the "futility exception," which excuses a party from exhausting administrative remedies "'if it is clear that [doing so] would be futile.'  [Citations.]"  (*Ibid.*)  This exception is "'"narrow,"'" and requires the party invoking it to "positively state that the administrative agency has declared what its ruling [would] be in a particular case."  (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1313.)  "'"The mere possibility, or even the

6

probability, that the responsible agency may deny [a] permit [is] not . . . enough.”’”’ (*Calprop Corp. v. City of San Diego* (2000) 77 Cal.App.4th 582, 594.) Rather, “‘“a sort of inevitability is required:  the prospect of refusal must be certain (or nearly so).”’”’ (*Ibid.*)

The trial court correctly concluded that Blanco failed to properly plead the futility exception here.  After he received the denial letter from the planning and development director, Blanco launched no administrative appellate challenges, deciding instead to challenge the denial in a petition for writ of mandate.  But the County has various administrative avenues for such challenges.  For example, decisions on building permits can be appealed to the board of building appeals.  (Santa Barbara County Code, ch. 10, § 10-1.12.[3])  Decisions on grading permits can be appealed to the board of grading appeals.  (*Id.*, ch. 14, § 14-32.)  Decisions on land-use permits, including those that deny permit applications or determine that applications are incomplete, can be appealed to the planning commission.  (*Id.*, ch. 35.102, § 35.102.040, subd. (A)(3).)  And the decisions of any of these intermediate appellate bodies can be challenged at the board of supervisors.  (*Id.*, ch. 10, § 10-1.12; *id.*, ch. 14, § 14-32.1, *id.*, ch. 35.102, § 35.102.050, subd. (A).)

But Blanco pursued none of these challenges.  He did not appeal the denial of his building permit to the board of building appeals.  He did not appeal the denial of his grading permit to the board of grading appeals.  He did not appeal the denial of his land-use permit to the planning commission.  And he

---

[3] The substantively identical procedure for appealing decisions on building permits was codified at section 10-1.11 when Blanco received his denial letter.

did not appeal the denial of any of these permits to the board of supervisors. It is thus "specious" for him to now "contend that it would be futile to exhaust administrative remedies [not] having attempted to do so . . . *before* filing suit." (*Black v. City of Rancho Palos Verdes* (2018) 26 Cal.App.5th 1077, 1090 (*Black*).)

Blanco counters that he properly pled futility by alleging that the County's decision was "certain to be adverse" given its determination that he "lacked the requisite 'authority'— "absent 'the [Cargasacchis'] consent'—to improve" the 1968 road. But this allegation is based on the planning and development director's letter. As the trial court noted, a "statement of opinion by [County] representatives *other than the body charged with hearing and deciding the conditions under which the proposed residence can be built* is not sufficient to allow [an] appellant to invoke futility." (*Tejon Real Estate, LLC v. City of Los Angeles* (2014) 223 Cal.App.4th 149, 158, italics added.)

Blanco attempts to recharacterize the letter, framing it as an interim decision that could not be appealed to a higher administrative body given that County ordinances only permit final decisions to be appealed. Blanco misreads the ordinances. Even if we assume that the letter was not a "final" decision, nothing in the applicable ordinances would have prevented Blanco from appealing. Section 10-1.12 and section 14-32 of the County code both permit appeals of any "decisions, interpretations, or acts" related to permits. And section 35.102.040 permits appeals from any "determination on the meaning or applicability of the . . . Development Code," any "determination that a discretionary permit application . . . is incomplete," and any "decision of the [d]irector to . . . deny an application for a [land-use] [p]ermit." Blanco was therefore

8

required to show, to a near certainty, why the board of building appeals, the board of grading appeals, the planning commission, and the board of supervisors would have refused to grant the permits he needs. Because he has not made this showing, the trial court's determination that he failed to properly plead futility was correct.

*Resolution of Cargasacchi litigation*

Blanco next contends the trial court erred when it concluded that he was required to resolve his litigation with the Cargasacchi family in order to exhaust administrative remedies. We disagree because this contention mischaracterizes the court's ruling.

The trial court did not conclude that Blanco needed to resolve his dispute with the Cargasacchis to exhaust administrative remedies, as he asserts, but rather that he had to appeal the planning and development director's denial letter up through the relevant agencies to the board of supervisors. Because he did not do so, he could not claim that exhausting administrative remedies would be futile. (See *Black, supra*, 26 Cal.App.5th at p. 1090.) Exhaustion was thus unrelated to Blanco's litigation with the Cargasacchis.

*Leave to amend*

Finally, Blanco contends the trial court abused its discretion when it refused to grant him leave to amend his writ petition to permit him to properly plead futility. But to succeed on this contention, Blanco must show a "reasonable possibility" that he can cure the petition's defect by amendment. (*Blank, supra*, 39 Cal.3d at p. 318.) Blanco cannot make that showing because, as he admits, he did not engage in any of the County's administrative appellate procedures. That prevents him from

properly pleading futility.  (See *Black*, *supra*, 26 Cal.App.5th at p. 1090.)

## DISPOSITION

The judgment is affirmed.  The County of Santa Barbara shall recover its costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

Timothy J. Staffel, Judge

Superior Court County of Santa Barbara

_____

Davis Wright Tremaine, Mary H. Haas and Nicole S. Phillis for Plaintiff and Appellant.

Rachel Van Mullem, County Counsel, Teresa Martinez, Deputy County Counsel, for Defendant and Respondent.