[No. A114815. First Dist., Div. Five. May 31, 2007.]

CITY AND COUNTY OF SAN FRANCISCO, Plaintiff and Appellant, v. INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 39, Defendant and Respondent.

## COUNSEL

Dennis J. Herrera, City Attorney, Elizabeth S. Salveson, Chief Labor Attorney, and Jill J. Figg, Deputy City Attorney, for Plaintiff and Appellant.

Weinberg, Roger & Rosenfeld, Stewart Weinberg and W. Daniel Boone for Defendant and Respondent.

Tami R. Bogert and Kristin L. Rosi for Public Employment Relations Board as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

JONES, P. J.—Labor relations and collective bargaining between most local California governmental agencies and their employees are governed by the Meyers-Milias-Brown Act (MMBA). (Gov. Code, §§ 3500–3511; *Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1077 [29 Cal.Rptr.3d 234, 112 P.3d 623] (*Coachella*).) Appellant City and County of San Francisco (the City) is a public employer subject to the MMBA, and has recognized respondent International Union of Operating Engineers, Local 39, as the exclusive bargaining representative for certain of its employees, pursuant to the MMBA.

In this appeal the trial court rejected the City's assertion that the court had jurisdiction to compel Local 39 to participate in arbitration of a labor dispute, as mandated by the City's charter. It held instead that determination of the claimed violation of the city charter was within the exclusive jurisdiction of the Public Employment Relations Board (PERB) under the MMBA. We hold that Government Code section 3509[1] grants PERB exclusive jurisdiction to decide whether unionized employees of the City are required by the terms of the city charter to participate in mandatory dispute resolution procedures.

---

[1] Unless otherwise indicated, all further section references will be to the Government Code.

### I. *FACTUAL AND PROCEDURAL BACKGROUND*

The City and each of its unions, including Local 39, have signed contracts governing the terms and conditions under which the union members work. Each contract is known as a memorandum of understanding (MOU), which extends for a defined period of time. When an MOU is due to expire, the City's charter obligates the City and the union to engage in good faith negotiations for a new MOU. (S.F. Charter, § A8.409-3.) However, the charter recognizes that agreement will not always be possible, and it provides a procedure to resolve any disputes. (S.F. Charter, § A8.409-4.) Under that procedure, disputes must be submitted to a three-member mediation/arbitration board. (S.F. Charter, § A8.409-4(a).) The mediation/arbitration board has the discretion to mediate or arbitrate the disputes or "adopt other procedures designed to encourage an agreement between the parties . . . ." (S.F. Charter, § A8.409-4(c).) If the parties cannot agree, they must submit to the mediation/arbitration board a "last offer of settlement on each of the remaining issues in dispute." (S.F. Charter, § A8.409-4(d).) The mediation/arbitration board must then select whatever proposal it finds "most nearly conforms to those factors traditionally taken into consideration in the determination of . . . public and private employment . . . ." (S.F. Charter, § A8.409-4(d).)

Any mediated agreement or arbitration award must be approved by the City's Board of Supervisors prior to the start of the City's new fiscal year on July 1. The first step in the arbitration process, the parties' selection of representatives for the mediation/arbitration board, must occur "Not later than January 20 of any year in which bargaining on an MOU takes place . . ." (S.F. Charter, § A8.409-4(b)). Accordingly, the City and its unions have only a brief window of time in which to mediate and arbitrate unresolved issues.

The City and Local 39 have used these arbitration procedures to resolve their labor disputes for several years. However, in October 2005, Local 39 told the City that it would not participate in arbitration during the negotiations for the new MOU that was to take effect on July 1, 2006. Then in January 2006, when a dispute arose, Local 39 declined to select an arbitrator as is required by the arbitration procedures. Negotiations continued into April 2006.

In April 2006, the City filed the superior court action that is at issue in the current appeal. As is relevant, the City alleged two causes of action. The first was a petition for writ of mandate. The City alleged Local 39 was required by the terms of the city charter to submit all unresolved labor disputes to arbitration. The second was a petition to compel arbitration. In this cause of

action, the City alleged that Local 39 was required under the terms of the MOU that was already in effect to submit to arbitration under the City's charter.

Local 39 opposed the petitions arguing they should be dismissed because the City had failed to exhaust its administrative remedies before filing suit. Specifically, Local 39 argued that under section 3509, PERB had exclusive jurisdiction to determine whether Local 39 was required by the city charter to submit its labor dispute to binding arbitration.

The trial court ruled it did not have jurisdiction to adjudicate the City's petition for writ of mandate, holding instead that PERB had exclusive jurisdiction over the dispute consistent with section 3509, a provision of MMBA. The court also rejected the City's petition to compel arbitration ruling that Local 39 was not required by the terms of the MOU that was then in effect to submit its disputes to binding arbitration.

While this appeal was pending several relevant events occurred.[2]

The day after the court denied the City's petition, the City filed a charge with PERB alleging that Local 39 was required by the terms of the city charter to submit all outstanding labor disputes to binding arbitration. As part of that request, the City sought emergency injunctive relief through PERB as authorized by section 3541.3, subdivision (j). The City sought an order requiring Local 39 to participate in the charter-mandated impasse resolution procedures because negotiations with the City's unions had to be completed and arbitration awards submitted to the board by May 23 to include any change in compensation in the City's budget for the new fiscal year. Three days later PERB denied the City's injunction request, but it did issue a complaint against Local 39 alleging it was obligated by the terms of the city charter to arbitrate all outstanding labor disputes. An administrative law judge conducted a trial on that complaint and in April 2007 he issued a tentative decision ruling that Local 39 was required by the terms of the city charter to submit its outstanding labor disputes to binding arbitration.

In addition, the City and Local 39 were able to negotiate a new MOU before the start of the City's new fiscal year. The terms of that MOU are not before us.

---

[2] While this case was being briefed, the City filed two motions that asked us to take judicial notice of certain events that occurred after the notice of appeal was filed. We have the authority to take judicial notice of those facts (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325 [48 Cal.Rptr.2d 87, 906 P.2d 1242]), and will do so given the unusual posture of this case.

## II. DISCUSSION[3]

### A. Writ of Mandate

#### 1. Does PERB Have Exclusive Jurisdiction?

The City contends the trial court erred when it ruled PERB has the exclusive jurisdiction to determine whether Local 39 was required by the terms of the city charter to arbitrate its outstanding labor disputes.

The MMBA governs employer-employee relations for most California local public entities. (§ 3501, subd. (c).) One of the purposes of the MMBA is to provide "a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations." (§ 3500, subd. (a).)

PERB is an expert, quasi-judicial administrative agency. (*Coachella, supra*, 35 Cal.4th at p. 1085.) One of PERB's primary functions is to investigate and adjudicate charges of unfair labor practices. (§ 3541.3, subd. (i).)

Before July 1, 2001, an employee association claiming a violation of the MMBA could bring an action in superior court. (*Coachella, supra*, 35 Cal.4th at p. 1077.) Effective July 1, 2001, however, the Legislature granted PERB "exclusive jurisdiction" over alleged violations of the MMBA. (35 Cal.4th at p. 1077.) That power is described in section 3509. As is relevant it states:

"(a) The powers and duties of [PERB as] described in Section 3541.3 shall also apply, as appropriate, to this chapter and shall include the authority as set forth in subdivisions (b) and (c). . . .

"(b) A complaint alleging any violation of this chapter or of any rules and regulations adopted by a public agency pursuant to Section 3507 . . . shall be processed as an unfair practice charge by the board. The initial determination as to whether the charge of unfair practice is justified and, if so, the appropriate remedy necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the board. . . .

"(c) The board shall enforce and apply rules adopted by a public agency concerning unit determinations, representation, recognition, and elections." (§ 3509, subds. (a)–(c).)

---

[3] Local 39 argues we should dismiss this appeal because it is moot. We decline to do so. This case presents issues of broad public interest that are likely to recur. Therefore we exercise our discretion to resolve the issues that have been presented even though the case arguably has been rendered moot. (*Cadence Design Systems, Inc. v. Avant! Corp.* (2002) 29 Cal.4th 215, 218, fn. 2 [127 Cal.Rptr.2d 169, 57 P.3d 647].)

Section 3507, subdivision (a), states that a "public agency may adopt reasonable rules and regulations . . . for the administration of employer-employee relations under this chapter." Among the rules and regulations a public agency may adopt are "Additional procedures for the resolution of disputes involving wages, hours, and other terms and conditions of employment." (§ 3507, subd. (a)(5).)

■ Here, the City's petition for writ of mandate alleged that Local 39 violated section A8.409-4 of the city charter by refusing to submit all outstanding labor disputes to binding arbitration. The City concedes that section A8.409-4 is a rule adopted by a public agency within the meaning of section 3507. Therefore, the City's writ petition alleges the violation of a rule adopted by a public agency under section 3507. Under the plain language of section 3509, subdivision (b), that petition, asserting a violation of a "[rule] . . . adopted by a public agency pursuant to Section 3507 . . . shall be processed as an unfair practice charge by [PERB]." As we will discuss, it matters not whether the City characterizes its charge as a refusal by Local 39 to comply with mandatory charter provisions as opposed to "an unfair practice charge" under MMBA. We conclude the trial court correctly rejected the City's writ petition because PERB has exclusive jurisdiction.

None of the arguments the City advances convince us a different conclusion is appropriate.

First, the City argues that section 3509, subdivision (b) only grants PERB the "exclusive jurisdiction . . . to make an 'initial determination as to whether the charge of unfair practice is justified . . . .' " As we understand this argument, the City contends PERB has jurisdiction only over a complaint filed with PERB, and has no jurisdiction over complaints that are filed in the superior court. The City has not cited any case that has interpreted section 3509 this way and our Supreme Court has reached the opposite conclusion. In *Coachella*, the court said section 3509 grants PERB the "exclusive jurisdiction" over alleged violations of the MMBA. (*Coachella, supra*, 35 Cal.4th at p. 1077.) The statute is not as narrow as the City suggests.

The City's next argument is based on section 3509, subdivision (c) which states PERB has the power to "enforce and apply rules adopted by a public agency concerning unit determinations, representation, recognition, and elections." Relying on the rule that the expression of some things in a statute necessarily means the exclusion of other things not expressed (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 852 [25 Cal.Rptr.2d 500, 863 P.2d 745]) the City argues section 3509, subdivision (c) cannot reasonably be construed to grant PERB the power to "enforce and apply" a local rule that sets forth procedures for the resolution of disputes. However, we do not hold that PERB has

jurisdiction over this dispute under section 3509, subdivision (c). We hold PERB has exclusive jurisdiction under section 3509, subdivision (b). The former section is not determinative.

 Next, the City argues that the power granted to PERB under section 3509, subdivision (c) "qualifies and clarifies" the power granted to PERB by section 3509, subdivision (b). According to the City, PERB has the power, under section 3509, subdivision (b), to adjudicate unfair practice claims, but only when those claims concern unit determinations, representation, recognition, or elections as described in section 3509, subdivision (c). To the contrary, section 3509, subdivision (a) grants PERB the powers described in section 3509, subdivisions (b) *and* (c). Nowhere does section 3509 state that the powers set forth in subdivision (b) are qualified by the powers granted in subdivision (c). We may not add language to a statute that is not otherwise present. (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].)

Next, the City argues PERB does not have jurisdiction because its complaint only alleges a violation of the city charter, not that Local 39 committed any unfair practice under the MMBA. While it is true the City's complaint does not mention the MMBA, "[a]t this stage in the proceedings, where the only question is PERB's jurisdiction, what matters is whether the underlying conduct on which the suit is based—however described in the complaint— may fall within PERB's exclusive jurisdiction." (*El Rancho Unified School Dist. v. National Education Assn.* (1983) 33 Cal.3d 946, 954, fn. 13 [192 Cal.Rptr. 123, 663 P.2d 893].) The complaint here alleges conduct that comes within the scope of section 3509, subdivision (b). The City may not, through artful pleading, evade PERB's exclusive jurisdiction.

In a related argument, the City contends that the superior court is "not divested of jurisdiction over causes of action that are distinct from unfair practice charges." While that may be so, the dispute here is an unfair practice charge within the meaning of section 3509, subdivision (b). It is irrelevant that the superior court may have jurisdiction to interpret charter provisions or grant declaratory relief in other types of disputes, or that the City declines to plead a claim for relief from an unfair labor practice.

None of the cases the City cites convince us the superior court has jurisdiction. Appellant relies on *Rojo v. Kliger* (1990) 52 Cal.3d 65 [276 Cal.Rptr. 130, 801 P.2d 373] (*Rojo*), where the issue was whether the California Fair Employment and Housing Act (FEHA) (§ 12900 et seq.) provides the exclusive remedy for injuries that arise from sex discrimination in employment. The *Rojo* court ruled FEHA did not provide the exclusive remedy because the act expressly disclaimed an intent to repeal other state

laws relating to employment discrimination: "By expressly disclaiming a purpose to repeal other applicable state laws . . . we believe the Legislature has manifested an intent to amplify, not abrogate, an employee's common law remedies for injuries relating to employment discrimination." (52 Cal.3d at p. 75.) Here, the MMBA authorizes local agencies to adopt rules and regulations for the regulation of employer-employee relations. (§ 3500, subd. (a).) In section 3509, subdivision (b), of the same chapter, the Legislature also granted PERB the "exclusive jurisdiction" to adjudicate charges of unfair labor practices. *Rojo* is not controlling because it interprets a different statutory scheme.

The City next relies on *Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168 [172 Cal.Rptr. 487, 624 P.2d 1215] (*Pacific Legal Foundation*), where the issue was whether the provisions of the State Employer-Employee Relations Act (SEERA) (§§ 3512–3524), which grant PERB the jurisdiction to investigate and devise remedies for unfair practices, were facially unconstitutional because they conflict with the State Personnel Board's constitutional jurisdiction to review disciplinary actions. (29 Cal.3d at p. 196.) The *Pacific Legal Foundation* court ruled those aspects of SEERA were not facially unconstitutional: "Because no actual jurisdictional conflict between PERB and the State Personnel Board confronts us in this proceeding, we have no occasion to speculate on how some hypothetical dispute that might be presented for decision in the future should properly be resolved." (29 Cal.3d at p. 200.) Here, we are not evaluating a facial challenge to the constitutionality of a statute, nor are we presented with two conflicting statutory schemes. *Pacific Legal Foundation* does not assist the City.

Next, the City relies on *Vargas v. Municipal Court* (1978) 22 Cal.3d 902 [150 Cal.Rptr. 918, 587 P.2d 714] (*Vargas*). There an employer fired two workers who had been active in union organizing activities and served them with notices evicting them from employer-provided housing. The employees filed an unfair practice charge with the Agricultural Labor Relations Board, (ALRB), and then argued that the municipal court lacked jurisdiction to adjudicate the unlawful detainer action. Our Supreme Court disagreed: "[W]e find nothing in the ALRA's general statutory scheme to suggest that the Legislature intended by such enactment to preclude municipal courts from adjudicating unlawful detainer actions arising out of agricultural labor disputes . . . ." (*Id.* at p. 912.) Here, we are not dealing with the Agricultural Labor Relations Act of 1975 (Lab. Code, § 1140. et seq.) and the statute at issue grants PERB the "exclusive jurisdiction" to adjudicate unfair practice disputes. *Vargas* is not controlling.

Finally, the City relies on *United Teachers of Ukiah v. Board of Education* (1988) 201 Cal.App.3d 632, 638–639 [251 Cal.Rptr. 499] (*United Teachers*),

and *Wygant v. Victor Valley Joint Union High School Dist.* (1985) 168 Cal.App.3d 319, 323 [214 Cal.Rptr. 205] (*Wygant*), both of which hold that parties may not divest the court of jurisdiction over alleged violations of the Education Code by framing their defense in a fashion that arguably invokes PERB's jurisdiction. Here, we are not dealing with the Education Code and PERB's jurisdiction is not being invoked through a defense. Rather, the violation that the City has alleged clearly and plainly comes within PERB's jurisdiction under section 3509, subdivision (b). *United Teachers* and *Wygant* do not assist the City.[4]

In sum we conclude the trial court correctly ruled PERB had exclusive jurisdiction.

### 2. *Exhaustion of Administrative Remedies*

The City contends that if PERB has exclusive jurisdiction, the City should be excused from pursuing that administrative remedy prior to filing suit.

■ In general, a party must exhaust its administrative remedies before resorting to the courts. (*Coachella, supra*, 35 Cal.4th at p. 1080.) Under this rule, an administrative remedy is exhausted only upon termination of all available, nonduplicative administrative review procedures. (*Ibid.*)

Nevertheless, the requirement that a party exhaust its administrative remedies is subject to exceptions. (*Coachella, supra*, 35 Cal.4th at p. 1080.) The City contends three of those exceptions apply here. First, the City argues it should be excused from pursuing its remedies with PERB because such an action would be futile. This is so, the City argues, because "[j]ust as [it] predicted in the lower court proceedings" PERB denied its request for an injunction and thus failed to "issue the expeditious relief required."

■ The failure to exhaust an administrative remedy is excused if it is clear that exhaustion would be futile. (*Coachella, supra*, 35 Cal.4th at p. 1080.) For the futility exception to apply, it is not sufficient that a party can show what the agency's ruling would be on a particular issue or defense. (*Id.* at p. 1081.) Rather, the party must show what the agency's ruling would be in the particular *case* before the court. (*Ibid.*)

Here, the City cannot invoke the futility exception simply by pointing to the fact that PERB denied its request for an injunction. Rather, the City must show how PERB inevitably would rule on its claim that Local 39 is required

---

[4] The City also relies on language in a case for which review was granted. The case is not citable. (See Cal. Rules of Court, rules 8.1105(d)(1) & 8.1115(a).)

to submit to binding arbitration under the charter's mandatory impasse provisions. The City has not even attempted to carry that burden.[5]

Next, the City contends it should be excused from pursuing its administrative remedies with PERB because doing so would cause irreparable injury.

A party is not required to exhaust its administrative remedies if doing so would result in irreparable injury. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 296 [109 P.2d 942].) However, this exception to the exhaustion rule has been applied rarely and only in the clearest of cases. (*Department of Personnel Administration v. Superior Court* (1992) 5 Cal.App.4th 155, 170 [6 Cal.Rptr.2d 714].) For example, in *Department of Personnel Administration,* the state was faced with what the court characterized as an "unprecedented budgetary crisis." (*Id.* at p. 163.) To help alleviate that crisis, the Department of Personnel Administration (DPA) decided to impose certain fiscal policies on state employees who were represented by certain unions. (*Id.* at pp. 163–164.) A superior court ruled the DPA lacked the authority to impose those policies, and the DPA challenged that decision through a petition for writ of mandate. (*Id.* at p. 165.) Before reaching the merits of the dispute, the Court of Appeal had to determine whether the superior court had jurisdiction over the matter, or whether the dispute should have been submitted to PERB. (*Id.* at p. 166.) The court assumed that PERB had jurisdiction, but ruled the employee unions were excused from pursuing their administrative remedy under the irreparable injury exception: "Because of the unprecedented nature of the fiscal crisis faced by the state, the urgent need for resolution of these issues prior to the end of the year, and the great potential for irreparable harm in the nature of increased layoffs of state employees, we believe the failure of the unions to exhaust their administrative remedy by filing an unfair practice charge with PERB should be excused." (*Id.* at p. 171.) An important factor supporting the court's decision was the fact that PERB had taken "the somewhat unusual step of filing a statement disavowing jurisdiction over the dispute." (*Id.* at p. 168.)

Nothing in the record here indicates that the City was faced with a crisis of that magnitude.[6] While the City wanted and needed to reach an agreement with Local 39 prior to the start of its new fiscal year, the record indicates that the City achieved that goal. The terms of that agreement are not before us;

---

[5] Indeed, as we have noted, PERB filed a complaint against Local 39 on this point and an administrative law judge has issued a tentative decision in favor of the City.

[6] At several points in its brief, the City alleges that when this dispute arose, 39 MOU's between the City and its unions were set to expire, covering 70 percent of the City's workforce. Even if we were to assume this to be true, the dispute at issue here is of a much narrower scope. It involves a single MOU with a single union. We have no basis on which to conclude the dispute here was of the degree described in the *Department of Personnel Administration* case.

however, consistent with our obligation to review the record in the light most favorable to the ruling being challenged (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193]), we must presume those terms are favorable to the City. Furthermore, unlike the *Department of Personnel Administration* case, PERB has asserted jurisdiction over this dispute. It issued a complaint against Local 39, a trial had been conducted, and a tentative decision in favor of the City is pending. We conclude the irreparable injury exception does not apply.

Finally, the City contends it was excused from pursuing its administrative remedies with PERB by what it describes as the "administrative jurisdiction exception" that was described in *Coachella.*

In *Coachella,* the court ruled that a court may, in certain circumstances, entertain a claim that an agency lacks jurisdiction before the agency proceedings have run their course. (*Coachella, supra,* 35 Cal.4th at p. 1082.) When deciding whether to exercise that power, a court should evaluate three factors: "the injury or burden that exhaustion will impose, the strength of the legal argument that the agency lacks jurisdiction, and the extent to which administrative expertise may aid in resolving the jurisdictional issue. [Citation.]" (*Id.* at p. 1082.)

Here, the trial court addressed the jurisdictional issue even though the administrative proceedings had not run their course, and it ruled PERB did have exclusive jurisdiction over this dispute. Under these circumstances, *Coachella* does not provide grounds for avoiding the otherwise applicable administrative remedies.

We conclude the City is not excused from pursuing its administrative remedies.

#### B. *Petition to Compel Arbitration*

The City contends the trial court should have granted its petition to compel arbitration because its MOU with Local 39 incorporates the terms of the city charter. Since the city charter requires Local 39 to submit to arbitration, the City argues the trial court should have applied the generally applicable arbitration rules (see Code Civ. Proc., § 1281.2) and ruled that Local 39 was required to arbitrate its disputes.

As we have explained, under section 3509, subdivision (b), PERB has the exclusive jurisdiction to determine whether Local 39 is in fact required by the terms of the city charter to arbitrate its outstanding labor disputes. The specific provisions of the MMBA that grant PERB exclusive jurisdiction over

this dispute control over the more general state arbitration statutes. (*Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 420 [128 Cal.Rptr. 183, 546 P.2d 687].)

## III. *DISPOSITION*

The judgment denying the City's petition for writ of mandate, and petition to compel arbitration is affirmed.

Simons, J., and Gemello, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 22, 2007, S154253.