165 Cal.App.4th 401 (2008)
COUNTY OF SACRAMENTO, Plaintiff and Respondent,
v.
AFSCME LOCAL 146 et al., Defendants and Appellants; PUBLIC EMPLOYMENT RELATIONS BOARD, Intervener and Appellant.
COUNTY OF SACRAMENTO, Plaintiff and Respondent,
v.
AFSCME LOCAL 146, Defendant and Appellant; PUBLIC EMPLOYMENT RELATIONS BOARD, Intervener and Appellant.
No. C054060. No. C054233.
Court of Appeals of California, Third District.
July 28, 2008.
*406 Beeson, Tayer & Bodine and Matthew Morbello for Defendant and Appellant AFSCME Local 146.
Leonard Carder, Arthur A. Krantz and Margot A. Rosenberg for Defendant and Appellant United Public Employees Local No. 1.
Tami R. Bogert, Wendi L. Ross, Tammy Samsel and Harry J. Gibbons for Intervener and Appellant.
Robert A. Ryan, Jr., County Counsel, and Krista C. Whitman, Deputy County Counsel, for Plaintiff and Respondent.
Jennifer B. Henning for the California State Association of Counties and League of California Cities as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION
HULL, J.
The Meyers-Milias-Brown Act (MMBA) (Gov. Code, § 3500 et seq.) governs labor relations between local government employers and employees. (Further undesignated section references are to the Government Code.) In 2001, the Legislature delegated jurisdiction over claims arising under the MMBA to the Public Employment Relations Board (PERB). (Stats. 2000, ch. 901, § 8.) In this matter, we consider the extent of that jurisdiction.
In 2006, in the midst of collective bargaining efforts, several unions representing employees of the County of Sacramento (County) threatened a strike. The County initiated this action in the superior court to enjoin the unions from ordering or encouraging certain employees to participate in the strike. The County alleged the work of those employees was critical to providing necessary public services. The court granted the requested relief.
The unions and PERB appeal, contending PERB has exclusive jurisdiction to consider the matter because it arises under the MMBA. The County contends in opposition that a claim based on concerns for public health and safety falls outside PERB's exclusive jurisdiction. We conclude PERB has the better argument and reverse.

FACTS AND PROCEEDINGS
United Public Employees, Local No. 1 (Local 1), Teamsters Local No. 228 (Local 228), Sacramento-Sierra's Building and Construction Trades Council *407 (Trades Council), AFSCME Local 146, AFL-CIO (Local 146), International Union of Operating Engineers Stationary Local 39, AFL-CIO (Local 39), and Social Services Union Local 535 (Local 535) are collective bargaining organizations representing various County employees.
A number of these employee unions were parties to memoranda of understanding (MOU) with the County that expired on June 30, 2006. The parties engaged in collective bargaining to reach new MOU's without success. On July 18, 2006, Local 1 informed the County it would initiate a strike on September 1, 2006, if its contract demands were not met. On August 3 and again on August 24, Local 1 informed the County the strike would begin on September 5.

Superior Court Case No. 06AS03704
On August 31, 2006, the County filed Sacramento County Superior Court Case No. 06AS03704 (Case No. 06AS03704) against Local 146, Local 1, Local 228, Local 39, and Trades Council seeking to enjoin them from "participating in or ordering, directing, requesting, exhorting, instructing, coercing, encouraging or in any other way inducing or attempting to induce" certain essential County employees from participating in the anticipated strike. The complaint identified nearly 200 employees by name whose jobs were alleged to be critical to providing essential County services.
On September 1, the County filed an ex parte application for temporary restraining order (TRO).
PERB filed an application to intervene in the action, asserting exclusive jurisdiction over the threatened strike. Various of the unions filed opposition to the County's application for a TRO arguing, among other things, the trial court lacked jurisdiction to issue the requested relief.
The trial court granted the County's application for a TRO, concluding injunctive relief was justified by the threat to public health and safety.
The unions thereafter filed opposition to the County's request for a preliminary injunction, again asserting PERB's exclusive jurisdiction. In addition, Local 39 moved to quash service of summons and complaint based on improper service.
On September 15, the trial court entered an order granting a preliminary injunction against Local 146, Local 1, Local 228, and Trades Council to prohibit them from ordering or encouraging a strike by the designated *408 employees. However, the court concluded it had no personal jurisdiction over Local 39 and vacated the TRO previously issued against that party.
On September 20, the court granted PERB's application to intervene.
PERB filed a notice of appeal from both the September 1 TRO and the September 15 preliminary injunction. Local 146, Local 228, and Local 1 also appealed.

Superior Court Case No. 06AS03790
On September 7, 2006, the County filed Sacramento County Superior Court Case No. 06AS03790 (Case No. 06AS03790) against the same unions plus Local 535 seeking to enjoin them from ordering or encouraging participation in the strike by certain additional County employees. The next day, the County filed an application for a TRO.
PERB filed an application to intervene in this action as well, and its application was granted. PERB, Local 146, Local 228, and Local 39 filed opposition to the County's request for injunctive relief.
On September 12, the court granted the County's request for a TRO as to three pharmacists. On September 29, the court issued a preliminary injunction covering the same three employees.
PERB appealed both of these orders. Local 146 and Local 228 also appealed the orders.
PERB moved to consolidate the appeals for purposes of briefing and argument. We granted the application.
On January 17, 2007, Local 228 filed a notice of voluntary abandonment of its appeals.

DISCUSSION

I

Introduction
The dispositive issue presented in this appeal is whether PERB has exclusive jurisdiction to resolve the claims raised by the County in its two superior court actions. PERB and the unions contend it does by virtue of 2001 legislation bringing claims arising under the MMBA within PERB's *409 exclusive jurisdiction. PERB and the unions argue the strike fell under the MMBA because it involved collective bargaining activity that was either arguably protected or prohibited by the MMBA. The County contends otherwise, arguing its claim is not that the strike was illegal under the MMBA but that, despite the legality of the strike, it threatened public health and safety. The County argues only the courts have jurisdiction to consider such a claim.
(1) The question presented is one of exhaustion of administrative remedies. In general, a party must exhaust available administrative remedies before resorting to the courts. (Abelleira v. District Court of Appeal (1941) 17 Cal.2d 280, 292 [109 P.2d 942].) Absent such exhaustion, the courts have no subject matter jurisdiction to proceed. (Id. at p. 293.)
(2) "The exhaustion doctrine is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary)." (Farmers Ins. Exchange v. Superior Court (1992) 2 Cal.4th 377, 391 [6 Cal.Rptr.2d 487, 826 P.2d 730].)
Thus, the question presented here is whether an administrative remedy is available through PERB for the strike activity challenged by the County in its superior court actions. However, before addressing that issue, we review the history of the relevant law as it has developed in this area.

II

Overview of PERB Jurisdiction
"In 1961, the Legislature enacted the George Brown Act (Stats. 1961, ch. 1964, pp. 4141-4143), which for the first time recognized the rights of state and local public employees to organize and to have their representatives meet and confer with their public agency employers over wages and working conditions. In 1968, the Legislature went a step further by enacting the MMBA (Stats. 1968, ch. 1390, pp. 2725-2729), which `authorized labor and management representatives not only to confer but to enter into written agreements for presentation to the governing body of a municipal government or other local agency.'" (Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd. (2005) 35 Cal.4th 1072, 1083 [29 Cal.Rptr.3d 234, 112 P.3d 623] (Coachella Valley).) The MMBA covers most public employees, but not employees of school districts. (35 Cal.4th at p. 1083.)
*410 In 1975, "the Legislature adopted the Educational Employment Relations Act (Gov. Code, §§ 3540-3549.3; hereafter the EERA), which governs employer-employee relations for public schools (kindergarten through high school) and community colleges. (Stats. 1975, ch. 961, § 2, pp. 2247-2263.) As part of this new statutory scheme, the Legislature created the Educational Employment Relations Board (EERB), `an expert, quasi-judicial administrative agency modeled after the National Labor Relations Board, to enforce the act.' [Citation.] The Legislature vested the EERB with authority to adjudicate unfair labor practice charges under the EERA. (See Stats. 1975, ch. 961, § 2, pp. 2249-2252.)
"The Legislature structured the EERA with the intention that it would eventually be expanded to incorporate other public employees. Thus, the EERA contains a declaration of purpose that includes this paragraph: `It is the further intention of the Legislature that any legislation enacted by the Legislature governing employer-employee relations of other public employees shall be incorporated into this chapter to the extent possible. The Legislature also finds and declares that it is an advantageous and desirable state policy to expand the jurisdiction of the board created pursuant to this chapter to cover other public employers and their employees, in the event that this legislation is enacted, and if this policy is carried out, the name of the Educational Employment Relations Board shall be changed to the "Public Employment Relations Board."' (Gov. Code, § 3540.)
"Two years later, in 1977, the Legislature enacted the State Employer-Employee Relations Act (Gov. Code, §§ 3512-3524) to govern relations between the state government and certain of its employees. (Stats. 1977, ch. 1159, § 4, pp. 3751-3760.) It was later renamed, and its official name is now the Ralph C. Dills Act (hereafter the Dills Act). (Stats. 1986, ch. 103, § 1, p. 237.) Despite the declaration of purpose two years earlier in the EERA, the Legislature did not incorporate the Dills Act into the EERA, instead enacting it as a separate chapter in the Government Code preceding the EERA. The Legislature did, however, expand the jurisdiction of the EERB to include adjudication of unfair practice charges under the Dills Act, and as a result the EERB was renamed the PERB. (See Gov. Code, §§ 3513, subd. (h), 3514.5, as added by Stats. 1977, ch. 1159, §§ 6-7, pp. 3761-3763.)
"Since 1977, the PERB's jurisdiction has continued to expand as the Legislature has enacted new employment relations laws covering additional categories of public agencies and their employees." (Coachella Valley, supra, 35 Cal.4th at pp. 1084-1085, fn. omitted.)
(3) PERB's general powers are described in section 3541.3. They include the power "[t]o investigate unfair practice charges or alleged violations of this *411 chapter, and take any action and make any determinations in respect of these charges or alleged violations as [PERB] deems necessary to effectuate the policies of this chapter." (§ 3541.3, subd. (i).) They also include the power "[t]o bring an action in a court of competent jurisdiction to enforce any of its orders, decisions, or rulings, or to enforce the refusal to obey a subpoena." (§ 3541.3, subd. (j).) If PERB issues a complaint alleging an unfair labor practice, it may "petition the court for appropriate temporary relief or restraining order." (Ibid.)
In San Diego Teachers Assn. v. Superior Court (1979) 24 Cal.3d 1 [154 Cal.Rptr. 893, 593 P.2d 838] (San Diego Teachers) and El Rancho Unified School Dist. v. National Education Assn. (1983) 33 Cal.3d 946 [192 Cal.Rptr. 123, 663 P.2d 893] (El Rancho), the California Supreme Court addressed the breadth of PERB's jurisdiction over disputes concerning strikes by teachers' unions. In San Diego Teachers, a teachers' union and its president sought annulment of contempt orders punishing them for conducting a strike in violation of a restraining order and preliminary injunction. Before the injunction was issued, the association and the school district had filed unfair labor practice charges against each other, but no action had been taken by PERB. (San Diego Teachers, at p. 3.)
The California Supreme Court annulled the contempt orders, concluding PERB had exclusive jurisdiction to resolve the dispute and the school district failed to exhaust its administrative remedies when it sought an injunction in the first instance from the court. The court considered three issues in assessing whether PERB had exclusive initial jurisdiction: "(1) Could PERB properly determine that the strike was an unfair practice under the EERA? (2) If it made that determination could it furnish relief equivalent to that which would be provided by a trial court? (3) Did the Legislature intend that PERB would have exclusive initial jurisdiction over remedies against strikes that it properly could find were unfair practices?" (San Diego Teachers, supra, 24 Cal.3d at p. 7.)
The court answered each of these questions in the affirmative. The court found in particular that the strike potentially amounted to an unfair labor practice under the EERA (Educational Employment Relations Act) as a failure to negotiate in good faith or participate in impasse procedures. (San Diego Teachers, supra, 24 Cal.3d at pp. 8-9.) The court further found PERB could provide relief equivalent to that which could be provided judicially. (Id. at pp. 9-11.) Finally, applying principles formulated under the National Labor Relations Act (NLRA) (29 U.S.C. § 151 et seq.), the court concluded the Legislature intended that PERB have exclusive jurisdiction to determine the unfair labor practice claim. (San Diego Teachers, at pp. 12-13.)
*412 Four years later, in El Rancho, the high court was presented with a claim for monetary damages arising from strike activity. The Court of Appeal had concluded there was no arguable basis on which the strike giving rise to the damages could be found to be an unfair labor practice under the EERA and, therefore, PERB did not have exclusive jurisdiction. (El Rancho, supra, 33 Cal.3d at pp. 948-952.)
The Supreme Court disagreed. As in San Diego Teachers, the court concluded the strike activity at issue in El Rancho was both arguably protected and arguably prohibited by the EERA. (El Rancho, supra, 33 Cal.3d at pp. 953, 956, 959.) The court further concluded the controversy presented to PERB would be the same as that presented to a court. (Id. at pp. 956-957.) Finally, the court concluded that, because the strike activity was arguably protected and arguably prohibited, the superior court had no jurisdiction to issue an injunction or award damages for failure to comply with the injunction. (Id. at p. 960.)
(4) The result of these cases was to establish PERB's exclusive initial jurisdiction over any activity that is arguably protected or arguably prohibited by the EERA. Where such activity is at issue, it is for PERB to determine in the first instance whether the activity in fact falls within the scope of the EERA and, if so, what remedy is appropriate.
(5) Two years after El Rancho, in County Sanitation Dist. No. 2 v. Los Angeles County Employees' Assn. (1985) 38 Cal.3d 564 [214 Cal.Rptr. 424, 699 P.2d 835] (County Sanitation), the high court was presented with a dispute over a strike by sanitation workers governed by the MMBA. At the time, PERB did not have jurisdiction over MMBA matters. Rejecting a long line of cases holding that public employees have no right to strike, the court concluded "the common law prohibition against all public employee strikes is no longer supportable." (38 Cal.3d at p. 567.) However, the court also recognized that "there are certain `essential' public services, the disruption of which would seriously threaten the public health or safety." (Id. at p. 580.) As to those employees, a strike may be found to be illegal and may be enjoined. (Id. at p. 586.)
As noted above, in 2001, the Legislature brought claims under the MMBA within the exclusive jurisdiction of PERB. (Coachella Valley, supra, 35 Cal.4th at p. 1085.) Reenacted section 3509 reads:
"(a) The powers and duties of [PERB] described in Section 3541.3 shall also apply, as appropriate, to this chapter and shall include the authority as set forth in subdivisions (b) and (c)....
"(b) A complaint alleging any violation of this chapter or of any rules and regulations adopted by a public agency pursuant to Section 3507 or 3507.5 *413 shall be processed as an unfair practice charge by [PERB]. The initial determination as to whether the charge of unfair practice is justified and, if so, the appropriate remedy necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of [PERB]. [PERB] shall apply and interpret unfair labor practices consistent with existing judicial interpretations of this chapter.
"(c) [PERB] shall enforce and apply rules adopted by a public agency concerning unit determinations, representation, recognition, and elections...."
(6) By virtue of the foregoing, the Legislature vested PERB with exclusive jurisdiction over violations of the MMBA. (Coachella Valley, supra, 35 Cal.4th at p. 1077.)

III

PERB's Jurisdiction over This Matter
PERB and the unions contend PERB has exclusive jurisdiction over this matter, because the challenged strike activity falls within the scope of the MMBA. They argue that because an employer's failure to meet and confer may be an unfair labor practice under the MMBA (see Cal. Code Regs., tit. 8, § 32604, subd. (c)), a strike in response to such employer conduct is arguably protected activity. (See El Rancho, supra, 33 Cal.3d at pp. 958-959.) On the other hand, the strike itself may be prohibited as a failure to meet and confer. (See Cal. Code Regs., tit. 8, § 32604, subd. (c); San Diego Teachers, supra, 24 Cal.3d at pp. 8-9.)
The trial court concluded the County's claims did not fall within the scope of the PERB's jurisdiction, explaining: "PERB does have exclusive jurisdiction over strikes alleged to be illegal or an unfair labor practice. The County does not contend and the Court does not find that the strike(s) involved here are illegal. Rather the claim of the [C]ounty is that notwithstanding the legality of the strike, there are certain employees who must be ordered back to work because to fail to do so would create [a] substantial and imminent threat to the public safety, health, and welfare."
(7) The issue presented in this matter is the effect of the 2001 legislation transferring jurisdiction over claims arising under the MMBA to PERB. "The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] To determine legislative intent, we turn first to the words of the statute, giving them their usual and *414 ordinary meaning. [Citations.] When the language of a statute is clear, we need go no further. However, when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]" (Nolan v. City of Anaheim (2004) 33 Cal.4th 335, 340 [14 Cal.Rptr.3d 857, 92 P.3d 350].)
Reenacted section 3509, subdivision (b), states: "A complaint alleging any violation of this chapter ... shall be processed as an unfair practice charge by [PERB]. The initial determination as to whether the charge of unfair practice is justified and, if so, the appropriate remedy necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of [PERB]...." This language appears relatively clear. PERB has jurisdiction over claims arising under the MMBA. In addition, the initial determination whether a claim arises under the MMBA is for PERB. However, does this mean PERB has exclusive initial jurisdiction to determine whether every claim arising between employers and employees or employee unions arise under the MMBA?
In Wygant v. Victor Valley Joint Union High School Dist. (1985) 168 Cal.App.3d 319 [214 Cal.Rptr. 205] (Wygant), a school district policy required that a teacher complete so many units of professional growth within a four-year period in order to advance on the experience portion of the district's salary schedule. The plaintiff teacher failed to earn sufficient professional growth units within the four-year period and was denied credit for two years of experience. She filed this action seeking reclassification on the salary schedule and rescission of the district's professional growth policy, claiming the policy violated the mandate of Education Code section 45028 that certificated employees be uniformly classified based on years of training and experience. (Wygant, at pp. 321-322.)
The Court of Appeal rejected the district's claim that the plaintiff was required to exhaust her administrative remedies before PERB. The court explained the matter did not involve a claimed unfair labor practice under the EERA but a violation of a specific provision of the Education Code. (Wygant, supra, 168 Cal.App.3d at pp. 322-323.) The court rejected attempts to transform the plaintiff's claim into one that the district failed to meet and negotiate in good faith. According to the court: "Every employee lawsuit complaining of acts of a school district qua employer arguably raises a question of whether a school district was meeting and negotiating in good faith, yet PERB's exclusive jurisdiction is not all-inclusive." (Id. at pp. 324-325.)
*415 In assessing whether PERB has exclusive jurisdiction to resolve this matter, where the County claims a threatened strike will disrupt essential public services and thereby harm public health and safety, we begin with the issues outlined by the Supreme Court in San Diego Teachers.

A. Could PERB properly determine the strike was an unfair practice under the MMBA?

(8) The trial court concluded PERB did not in fact have jurisdiction over this dispute, because the County's complaints did not in fact allege an unfair labor practice. However, prior California Supreme Court authority, as described above, holds that a claim falls within PERB's exclusive jurisdiction if the conduct alleged is arguably protected or arguably prohibited. (See El Rancho, supra, 33 Cal.3d at pp. 953, 956, 959.) In other words, the issue is not whether the conduct in fact violates the act in question but whether it arguably does so. In making this assessment, the challenged activity must be construed broadly in order to provide "exclusive jurisdiction over activities arguably protected or prohibited." (Id. at p. 953.) Whether the activity is in fact protected or prohibited is for PERB to decide, not the court.
In deciding it had authority to make this decision, the trial court relied on County Sanitation, supra, 38 Cal.3d 564, in which the state high court determined it is for the courts to decide if a strike is enjoinable as a threat to public health and safety. However, at the time of County Sanitation, PERB did not have jurisdiction over claims arising under the MMBA.
(9) The trial court's conclusion that it had jurisdiction to adjudicate the County's claims is wrong for another reasonit ignores the alternative basis for finding PERB jurisdiction, i.e., whether the activity is arguably protected. As argued by the unions, strike activity in response to an employer's refusal to bargain in good faith may be protected activity. (See El Rancho, supra, 33 Cal.3d at pp. 958-959.)
(10) Finally, the trial court's conclusion that the strike was legal notwithstanding that certain employees may still be enjoined from participating in it due to a threat to public health and safety is contradictory. It is a matter of semantics to say a strike is legal yet may be enjoined. The fact that certain employees may be prohibited from participating in a strike necessarily makes the strike illegal as to those employees. In County Sanitation, the high court announced the following rule: "[S]trikes by public employees are not unlawful at common law unless or until it is clearly demonstrated that such a strike creates a substantial and imminent threat to the health or safety of the public." (County Sanitation, supra, 38 Cal.3d at p. 586.) In other words, when a strike by public employees threatens public health or safety, it becomes illegal.
*416 The trial court also relied on the fact the County had not expressly alleged the strike was illegal. The County, on appeal, takes this one step further, arguing that, not only did it not allege the strike was illegal, it could not have done so. According to the County, it could not in good faith have argued the strike amounted to a failure to bargain in good faith. Rather, as explained above, its claim was that the strike was permissible, but certain key employees could not be allowed to participate. Amici curiae California State Association of Counties and League of California Cities likewise assert the County did not allege the unions engaged in any MMBA-prohibited activity.
(11) However, the question here is not whether the complaining party expressly alleged an unfair labor practice but whether the underlying conduct challenged is arguably protected or arguably prohibited. As the state high court explained in El Rancho: "At this stage in the proceedings, where the only question is PERB's jurisdiction, what matters is whether the underlying conduct on which the suit is basedhowever described in the complaint may fall within PERB's exclusive jurisdiction." (El Rancho, supra, 33 Cal.3d at p. 954, fn. 13; see also City and County of San Francisco v. International Union of Operating Engineers, Local 39 (2007) 151 Cal.App.4th 938, 945 [60 Cal.Rptr.3d 516].) "The [County] may not, through artful pleading, evade PERB's exclusive jurisdiction." (City and County of San Francisco, at p. 945.)
As for the County's assertion that it could not have alleged an unfair labor practice charge, this is based on a faulty assumption that no unfair labor practice is implicated where the County seeks to stop essential employees from striking. On the contrary, there is no reason to treat a strike by essential employees any differently than a strike by nonessential employees. Either way, the strike is arguably an attempt to put pressure on the employer rather than bargain in good faith, i.e., arguably prohibited. The only difference is that a strike by essential employees may exert even greater pressure on the employer.
The strike at issue here was both arguably protected and arguably prohibited and, therefore, falls within the scope of the MMBA.

B. Could PERB furnish relief equivalent to that which would be provided by a trial court?

The County contends PERB jurisdiction over this matter should not be recognized, because PERB is not well suited to decide whether to seek an injunction in order to protect public health and safety. According to the County, "PERB's objective is to foster constructive employment relations, not *417 to protect the public health and safety." The County argues "PERB's expertise is limited to labor relations and violations of the MMBA, not local public health and safety issues."
A similar argument was raised and rejected in San Diego Teachers, where the court said: "It is contended ... that even if PERB could have applied for judicial relief against the strike the grounds on which this might have been done would not necessarily encompass all grounds on which a judicial order could be granted. It is argued that PERB's determination to seek an injunction, as well as its application to the court, would reflect only a narrow concern for the negotiating process mandated by the EERA and would ignore strike-caused harm to the public and particularly the infringement on children's rights to an education. An analogy is drawn to the rule that NLRB jurisdiction to remedy unfair practices does not preempt state suits that present different issues. [Citations.]
(12) "That argument erroneously presupposes a disparity between public and PERB interests. The public interest is to minimize interruptions of educational services. Yet did not an identical concern underlie enactment of the EERA? The Legislature was aware of the increase in public employee work stoppages despite the availability and use of injunctions and other sanctions to prevent or punish them. [Citations.] It does not follow from the disruption attendant on a teachers' strike that immediate injunctive relief and subsequent punishment for contempt are typically the most effective means of minimizing the number of teaching days lost from work stoppages. As observed in City and County of San Francisco v. Cooper [(1975)] 13 Cal.3d 898, 917 [120 Cal.Rptr. 707, 534 P.2d 403], the question of appropriate sanctions for illegal strike activity is complex. Harsh, automatic sanctions often do not prevent strikes and are counterproductive. PERB's responsibility for administering the EERA requires that it use its power to seek judicial relief in ways that will further the public interest in maintaining the continuity and quality of educational services." (San Diego Teachers, supra, 24 Cal.3d at p. 11.)
Based on San Diego Teachers, the County's assumption that PERB's interests are narrowly tailored to labor relations matters is unfounded. PERB's interests extend to protection of the public at large. In the present matter, where the County sought an injunction prohibiting the unions from ordering or encouraging certain employees from participating in the strike, there is no reason to believe PERB is not well suited to fashion an appropriate remedy that would minimize disruption of public services while protecting the parties' collective bargaining rights.
The County argues that recognizing exclusive jurisdiction in PERB to decide cases involving threats to public health and safety would usurp the *418 County's legal responsibility over such matters. However, this argument assumes the County has the power to enjoin strikes unilaterally. It does not. Even under the County's argument, it would have to seek relief from a court. Recognition of exclusive jurisdiction in PERB merely changes the forum in which the County must seek assistance.
The County further argues that a decision by PERB not to seek injunctive relief in a case where public health and safety is threatened could have disastrous consequences, because such decision is not reviewable. The County cites section 3509.5, subdivision (a), which reads: "Any charging party, respondent, or intervenor aggrieved by a final decision or order of the board in an unfair practice case, except a decision of the board not to issue a complaint in such a case, and any party to a final decision or order of the board in a unit determination, representation, recognition, or election matter that is not brought as an unfair practice case, may petition for a writ of extraordinary relief from that decision or order...." (Italics added.) However, because the County did not file a charge with PERB and, therefore, there was no occasion for PERB to decide whether to issue a complaint, we need not decide what effect a decision not to issue a complaint would have on the County's ability to seek relief from the courts. (See San Diego Teachers, supra, 24 Cal.3d at pp. 13-14.) In any event, if section 3509.5, subdivision (a), leaves the County without a remedy, a question we specifically do not decide, this is a concern for the Legislature to address.
The County next contends PERB should not be found to have exclusive jurisdiction over this matter, because PERB procedures are not well suited to deciding whether public health and safety are threatened and whether injunctive relief should be sought. The County argues the inherent delays associated with PERB proceedings will make emergency relief difficult to obtain.
(13) Under PERB regulations, a party potentially aggrieved by strike activity may request that PERB seek an injunction. (Cal. Code Regs., tit. 8, § 32450, subd. (a).) PERB's general counsel shall then initiate an investigation (id., § 32455) and recommend PERB action (id., § 32460). PERB then decides whether to seek injunctive relief. (Id., § 32465.)
A party seeking an injunction must give notice to both PERB and the party against whom relief is sought at least 24 hours in advance of a request. (Cal. Code Regs., tit. 8, § 32450, subd. (c).) PERB's general counsel has five days to make his or her recommendation to PERB, unless the request is made after a work stoppage or lockout has commenced, in which case the general counsel has only 24 hours. (Id., § 32460.) Although the regulations provide no time limit for PERB action, they do provide for expedited action in appropriate cases. (Id., § 32147.)
*419 We do not find the foregoing procedures unreasonable or unworkable. A party seeking an injunction from PERB must give advance notice, but so must a party seeking judicial relief. Although PERB's general counsel has up to five days to investigate the matter and make a recommendation to PERB, or 24 hours where a strike is already in progress, such action may be expedited. Likewise, PERB action on a recommendation may be expedited where appropriate. In this case, the County had ample time before the threatened strike to seek PERB assistance, and there is no reason to believe that assistance would not have been forthcoming in a timely manner.
The County argues the delays inherent in seeking PERB relief from a strike are untenable where essential employees are involved. According to the County, any such delays pose a danger to public health and safety. However, as explained in more detail below, when the Legislature transferred jurisdiction over MMBA matters to PERB in 2001, it did so with the backdrop of San Diego Teachers and El Rancho. (See People v. Overstreet (1986) 42 Cal.3d 891, 897 [231 Cal.Rptr. 213, 726 P.2d 1288] [the Legislature is presumed to be aware of existing laws and judicial decisions and to have enacted or amended statutes in light of this knowledge].) Thus, it is presumed the Legislature intended to grant PERB jurisdiction over all strikes that are arguably protected or arguably prohibited by the MMBA. Had the Legislature intended otherwise, it could have carved out an exception for essential employees, as it did with firefighters (Lab. Code, § 1962) or as the courts have done with police officers (see City of Santa Ana v. Santa Ana Police Benevolent Assn. (1989) 207 Cal.App.3d 1568, 1572 [255 Cal.Rptr. 688]).
Finally, as explained in San Diego Teachers, supra, 24 Cal.3d at page 11, and discussed above, there is no disparity between PERB's interest and the public interest with respect to public employee strikes.
(14) We conclude resort to PERB in the first instance would not deprive a party in a public labor dispute of remedies that could be obtained through an action initiated in court.

C. Did the Legislature intend that PERB have exclusive initial jurisdiction over strikes that it properly could find were arguably protected or arguably prohibited by the MMBA?

As explained above, in matters of legislative intent, we begin with the language of the provision. If that language is clear, we go no further. (Nolan v. City of Anaheim, supra, 33 Cal.4th at p. 340.) Reenacted section 3509, subdivision (b), states: "A complaint alleging any violation of this chapter ... shall be processed as an unfair practice charge by [PERB]. The initial determination as to whether the charge of unfair practice is justified and, if *420 so, the appropriate remedy necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of [PERB]...." This language appears clear and grants PERB jurisdiction to determine whether a claim arises under the MMBA.
(15) In any event, at the time the Legislature delegated to PERB jurisdiction over claims arising under the MMBA, California Supreme Court precedent established that PERB has exclusive initial jurisdiction to determine if conduct that is arguably protected or arguably prohibited falls under one of the acts it administers. The Legislature is deemed to have been aware of judicial decisions already in existence and to have enacted or amended a statute in light thereof. (People v. Overstreet, supra, 42 Cal.3d at p. 897.) "`[I]t is not to be presumed that the [L]egislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.'" (Big Creek Lumber Co. v. County of Santa Cruz (2006) 38 Cal.4th 1139, 1149-1150 [45 Cal.Rptr.3d 21, 136 P.3d 821].)
The County nevertheless argues the legislative history of the 2001 statutory changes demonstrates the Legislature did not intend to grant PERB jurisdiction over strikes that threaten public health and safety. The County requests that we take judicial notice of that legislative history, which shows that an earlier version of the 2001 legislation contained language expressly adopting the holding in County Sanitation, but the language in question was excised before enactment. We grant the County's request for judicial notice. According to the County, the elimination of any reference to County Sanitation, which held that public employees have a right to strike unless the strike threatens public health and safety, demonstrates the Legislature did not intend for consideration of health and safety issues to be delegated to PERB.
We disagree. The earlier version of the 2001 legislation to which the County refers contained an amendment to former section 3509 (recodified as new section 3510) to read: "(a) The provisions of this chapter shall be interpreted and applied by the board in a manner consistent with and in accordance with judicial interpretations of this chapter. [¶] (b) The enactment of this chapter shall not be construed as making the provisions of Section 923 of the Labor Code applicable to public employees. The holding of County Sanitation[,supra,] 38 Cal.3d 564 is hereby adopted and shall be applied for the purposes of this chapter." (Sen. Bill No. 739 (1999-2000 Reg. Sess.) as amended Sept. 10, 1999, § 8, italics added.) The last sentence of subdivision (b) was later eliminated from the provision. (See § 3510.)
(16) We see no reason to conclude the elimination of any reference to County Sanitation from the legislation ultimately enacted signaled an intent to *421 withhold jurisdiction over health and safety issues from PERB. At most, the change in the legislative language demonstrates an intent that the new legislation not codify the holding in County Sanitation. Inasmuch as the primary holding in County Sanitation was that public employees have a general right to strike, it is more reasonable to conclude the Legislature did not intend to codify this holding. Furthermore, in the area of statutory construction, an examination of what the Legislature has done, rather than what it has not done, is generally the more fruitful inquiry. As evidence of legislative intent, unpassed bills have little value. (Yoshisato v. Superior Court (1992) 2 Cal.4th 978, 991, fn. 7 [9 Cal.Rptr.2d 102, 831 P.2d 327].) "[L]egislative inaction is `"a weak reed upon which to lean"'...." (Troy Gold Industries, Ltd. v. Occupational Safety & Health Appeals Bd. (1986) 187 Cal.App.3d 379, 391, fn. 6 [231 Cal.Rptr. 861].) Here, we look to what the Legislature enacted rather than what it failed to enact.
The County nevertheless argues that in 2002 the Legislature amended section 3509 without expressly granting PERB jurisdiction over strikes by public employees. (Stats. 2002, ch. 1137, § 2.) The County argues this demonstrates the Legislature's intent not to extend jurisdiction over strikes threatening public health and safety to PERB. However, this argument presupposes that PERB did not already have such jurisdiction by virtue of the 2001 legislation.
Finally, the County cites Assembly Bill No. 553 (2007-2008 Reg. Sess.), introduced on February 21, 2007 (Assembly Bill 553), which proposed to add a new subdivision (d) to section 3509. As later amended, the proposed new subdivision read: "The determination whether to seek from a court of competent jurisdiction injunctive relief involving or growing out of a strike, work stoppage, or lockout involving an employee organization and a public agency is within the exclusive jurisdiction of the board." (Assem. Bill 553, as amended May 8, 2007, § 2, italics omitted.) The County argues this proposed legislation is based on an understanding that PERB does not currently have jurisdiction over strikes, work stoppages and lockouts involving public employees.
According to the County, this understanding is reinforced by the Governor's letter of September 26, 2007, explaining his reason for not signing the legislation. The County requests that we take judicial notice of this letter, and we grant that request. In the letter, the Governor says: "This bill would provide [PERB] with exclusive authority to determine whether public health and safety would be at risk in strike or lockout situations. Doing so would add an unnecessary layer of bureaucracy and potentially place the public at risk. [¶] Cities and counties have common law and statutory authority over matters of public health and safety. When local governments seek injunctive *422 relief from a strike, they are doing so because of a potential threat to the public health and safety of citizens. It is therefore imperative that local governments have access to immediate injunctive relief from superior courts during strike situations. As the courts are sufficiently suited to address matters of public health and safety, there is no reason to force decisions on injunctive relief into the slower PERB process."
Notwithstanding the proposed 2007 legislation and the Governor's veto message, we are not persuaded the Legislature of 2001 did not intend that strikes involving public health and safety issues fall within the exclusive jurisdiction of PERB. The 2007 legislation was not limited to strikes involving public health and safety issues. It purported to grant PERB jurisdiction over all public employee strikes. However, even the County does not argue that PERB does not have jurisdiction over strikes by public employees. The County's argument is limited to public employees who provide essential services. Furthermore, the proposed legislation specifically states it is "intended to be technical and clarifying of existing law." (Assem. Bill 553, as amended May 8, 2007, § 1.) Hence, the legislation actually reflects the Legislature's understanding that PERB already has exclusive jurisdiction over strikes, work stoppages and lockouts involving public employees, notwithstanding the Governor's contrary assumption.
(17) Based on the foregoing, we conclude PERB has exclusive initial jurisdiction over a challenge to a strike that is arguably protected or arguably prohibited by the MMBA and that the strike in this matter falls within that jurisdiction, notwithstanding the threats to public health and safety.

IV

Exceptions to Exhaustion Requirement
The County contends that, notwithstanding PERB's exclusive initial jurisdiction over the strike activity, it should be excused from exhausting its administrative remedy under the "local concern doctrine."
In Pittsburg Unified School Dist. v. California School Employees Assn. (1985) 166 Cal.App.3d 875 [213 Cal.Rptr. 34] (Pittsburg Unified), unions appealed from a preliminary injunction prohibiting them from picketing and leafleting outside the personal offices of certain school board members, arguing that such activity was guaranteed by the First Amendment. Despite finding the activity was arguably protected or arguably prohibited by the EERA, the court concluded the school district was excused from the requirement to exhaust its administrative remedies with PERB.
*423 Borrowing from NLRA precedent, the Court of Appeal explained: "Under the federal model, state courts have been allowed to enforce certain laws of general applicability even though aspects of the challenged conduct were arguably protected or prohibited by the NLRA. `Thus, for example, the Court has upheld state-court jurisdiction over conduct that touches "interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." [Citations.]' (Sears, Roebuck & Co. v. Carpenters (1978) 436 U.S. 180, 195 [56 L.Ed.2d 209, 224, 98 S.Ct. 1745].) This `local concern exception' rests in part upon principles of federalism but also upon a recognition that, in certain areas, decisions of local courts do not present substantial danger of interference with administrative adjudication. (Kaplan's Fruit & Produce Co. v. Superior Court (1979) 26 Cal.3d 60, 75 [160 Cal.Rptr. 745, 603 P.2d 1341].)
(18) "Two factors are considered relevant to application of the local concern exception to the arguably prohibited branch of the preemption doctrine. First, does there exist a `significant state interest in protecting the citizen from the challenged conduct.' Second, despite the occurrence of the challenged conduct in the course of a labor dispute and the possibility of filing an unfair labor charge, does the exercise of state jurisdiction over the tort claim entail little risk of interference with the regulatory jurisdiction of the administrative agency. (Sears, Roebuck & Co. v. Carpenters, supra, 436 U.S. at p. 196 [56 L.Ed.2d at p. 224].) The Supreme Court in Sears summed up the `critical inquiry' as `whether the controversy presented to the state court is identical to ... or different from ... that which could have been ... presented to the Labor Board.' (Id. at p. 197 [56 L.Ed.2d at p. 225]; El Rancho Unified School Dist., supra, 33 Cal.3d at p. 956.) `For it is only in the former situation that a ... court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch ... was designed to avoid.' (Sears, supra, at p. 197, fn. omitted [56 L.Ed.2d at pp. 225-226].)" (Pittsburg Unified, supra, 166 Cal.App.3d at p. 885.)
Assuming the validity of this local concern exception to exclusive administrative jurisdiction, and that the County has a significant interest in protecting its citizens from the disruption of essential services, the second prong of the Pittsburg Unified test is not satisfied here. The question of whether the exercise of superior court authority over the strike activity at issue here would entail a risk of interfering with the regulatory jurisdiction of PERB turns on whether the inquiry presented to the court or PERB would be identical. As we have explained, the County's assertions go to the right of public employees to strike in order to exert pressure on the employer to accede to their contract demands. The fact that essential employees are involved merely goes to the amount of pressure exerted. Resolution of this *424 matter goes to the very heart of labor law and PERB's jurisdiction. The present matter does not involve independent tort activity by strikers or picketers or any violation of law independent of the MMBA. Hence, the local concern doctrine does not preclude PERB jurisdiction.
(19) The County nevertheless contends exhaustion should be excused in this matter because PERB lacks authority to resolve the underlying dispute between the parties. In Coachella Valley, the state high court explained: "In deciding whether to entertain a claim that an agency lacks jurisdiction before the agency proceedings have run their course, a court considers three factors: [1] the injury or burden that exhaustion will impose, [2] the strength of the legal argument that the agency lacks jurisdiction, and [3] the extent to which administrative expertise may aid in resolving the jurisdictional issue." (Coachella Valley, supra, 35 Cal.4th at p. 1082.) According to the County, each of these factors favors excusing exhaustion.
The County argues exhaustion will risk substantial public injury. However, this assertion is based on the County's arguments regarding the inherent delays in PERB proceedings. However, we have already addressed this issue and conclude the inherent delays may be more perceived than real.
The County next asserts its argument against PERB jurisdiction under the circumstances of this case is strong. However, we have already concluded the strike activity at issue is arguably protected or arguably prohibited by the MMBA and therefore falls within PERB's jurisdiction.
Finally, on the third factor, the County argues administrative expertise can provide no aid in resolving the jurisdictional issue presented in this matter. We disagree. As explained above, both PERB and the courts are equipped to consider issues relating to public health and safety. However, PERB has specific expertise in determining whether a given strike that threatens public health and safety may nevertheless amount to a collective bargaining tactic that could be protected or prohibited by the MMBA. Acknowledging PERB jurisdiction will help to "promote the Legislature's purpose in creating an expert administrative body whose responsibility it is to develop and apply a comprehensive, consistent scheme regulating public employer-employee relations." (Link v. Antioch Unified School Dist. (1983) 142 Cal.App.3d 765, 769 [191 Cal.Rptr. 264].)
In sum, we conclude this matter presents no basis for excusing exhaustion of PERB's exclusive initial jurisdiction. Having so concluded, we need not consider the alternate contention of PERB and the unions that the trial court was required to comply with Labor Code section 1138.1 before issuing injunctive relief.

*425 DISPOSITION
The orders of the trial court granting the County's requests for injunctive relief in both Case No. 06AS03704 and Case No. 06AS03790 are reversed. The matter is remanded to the trial court with directions to dismiss the two actions for lack of subject matter jurisdiction. Defendant unions and PERB are entitled to their costs on appeal.
Sims, Acting P. J., and Davis, J., concurred.